UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE DONALD C. POGUE, SENIOR JUDGE

| | |
|---|---|
| **HARTFORD FIRE INSURANCE COMPANY,** <br><br> Plaintiff, <br><br> v. <br><br> **UNITED STATES,** <br><br> Defendant. | **Consol. Court No. 09-122** |

## <u>ORDER</u>

Upon consideration of plaintiff's motion for summary judgment, plaintiff's statement of material facts not in dispute, plaintiff's memorandum in support of its motion for summary judgment, and all other papers and proceedings had herein, it is hereby

ORDERED that plaintiff's motion for summary judgment be, and hereby is, granted; and it is further

ORDERED that all payments made by plaintiff to defendant to satisfy defendant's demands on the single entry bonds in this matter be refunded, together with interest as allowed by law.

_____
Hon. Donald C. Pogue, Senior Judge

Dated: _____
New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE DONALD C. POGUE, SENIOR JUDGE

| | |
|---|---|
| HARTFORD FIRE INSURANCE COMPANY,<br><br>                    Plaintiff,<br><br>       v.<br><br>UNITED STATES,<br><br>                    Defendant. | Consol. Court No. 09-00122 |

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, Hartford Fire Insurance Company, pursuant to Rule 56 of the Rules of the United States Court of International Trade, and by its attorneys Barnes, Richardson & Colburn, LLP, moves this Court for summary judgment is its favor and against the defendant, the United States. In this action, plaintiff challenges defendant's demands against single entry Customs bonds on which plaintiff is surety.

Summary judgment in favor of the plaintiff is appropriate because there are no genuine issues of material fact in dispute, and plaintiff is entitled to judgment in its favor as a matter of law, as explained in the accompanying memorandum in support of plaintiff's motion for summary judgment.

WHEREFORE, plaintiff respectfully moves this Court for an order (1) granting plaintiff's motion for summary judgment, and, (2) ordering defendant to refund all payments made by plaintiff to defendant to satisfy defendant's demands on the single entry bonds in this matter, together with interest as allowed by law.

Respectfully submitted,

BARNES, RICHARDSON & COLBURN, LLP
Attorneys for Plaintiff
100 William Street, Suite 305
New York, NY 10038
Tel: (212) 725-0200

/S/_____
       Frederic D. Van Arnam, Jr.

Dated: July 15, 2016
      New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. DONALD C. POGUE, SENIOR JUDGE

---

| | |
|---|---|
| HARTFORD FIRE INSURANCE COMPANY, | : |
| Plaintiff, | : |
| v. | : |
| UNITED STATES | : |
| Defendant, | : |

Consol. Court No.  09-00122

---

## PLAINTIFF'S STATEMENT OF MATERIAL
## FACTS AS TO WHICH THERE IS NO GENUINE DISPUTE

Pursuant to Rule 56 of the Rules of the United States Court of International Trade,

plaintiff sets forth the following statement of material facts as to which there is no genuine issue

to be tried:

1.     Hartford Fire Insurance Company ("Hartford") was the surety for the single entry

bonds ("SEBs") at issue in this case.  Consolidated Complaint at 7, 34, 47, 59, 71, and 84,

Answer at 7, 34, 47, 59, 71, and 84.

2.     U.S. Customs and Border Protection ("Customs") requires that single entry bonds

be submitted to it in writing on Customs Form ("CF") 301.  Deposition of the Defendant by its

Designated Spokesperson, Bruce Ingalls at 32-33, attached as Exhibit C to Plaintiff's

Memorandum in Support of its Motion for Summary Judgment ("Pl Ex. C").

3.     A properly executed bond or other security is needed in order to import

merchandise into the United States.  *Pl Ex. C* at 33.

4.     Prior to the release of the imported merchandise the importer, or its customs

house broker acting as the agent of the importer, must submit the bond to Customs for its

approval.  *Pl Ex. C* at 29-30.

5.      Customs is required to review the bond to ensure that the bond meets all regulatory requirements and is properly executed. *Pl Ex. C* at 30.

6.      Federal regulations require specific information that a single transaction bond must include prior to Customs' approval of the bond. Department of Homeland Security, Office of Inspector General Report, *Efficacy of Customs and Border Protection's Bonding Process* (OIG 11-92, June 2011), p.5, attached as Exhibit B to Plaintiff's Memorandum in Support of its Motion for Summary Judgment ("*Pl Ex. B*").

7.      The Part 1 is the top copy of a multiform CF 301 that is submitted by the importer or its customs house broker to Customs as the original bond. *Pl Ex. C* at 29-30, 86. Hartford multi-form, pre-printed CF 301 attached as Confidential Exhibit F to Plaintiff's Memorandum in Support of its Motion for Summary Judgment ("*Pl Conf. Ex. F*").

8.      Properly executed bonds require the signatures of the bond principal and surety, and other essential data elements set forth in the regulations. *Pl Ex. C* at 33-34.

9.      Customs routinely rejects as deficient bonds that fail to include all of the data elements required by the regulations. *Pl Ex. C* at 107-20. Customs Entry/Summary Rejection Sheets set out at Exhibit H to Plaintiff's Memorandum in Support of its Motion for Summary Judgment ("*Pl Ex. H*"). *Pl Ex. B* at 5.

10.     Customs is not authorized by statute or regulation to rely on extrinsic evidence to complete or remedy a bond that is missing information on the CF 301 form. *Pl Ex. C* at 38-39.

11.     Customs has no internal policies or procedures authorizing it to rely on extrinsic evidence to complete or remedy a bond that is missing information on the CF 301. *Pl Ex. C* at 38-39.

12.     The SEBs at issue in this case were incomplete and did not fully comply with the regulations. *Pl Ex. C* at 244-249.

13.     Each of the SEBs at issue in this case was missing, respectively, the signature of the principal, the signature of the surety, the execution date of the bond, the transaction date of the bond, the identification of the transaction being bonded, the limit of liability of the bond and/or the complete legal designation of the principal, including a statement as to its state of incorporation. *Pl Ex. C* at 245-49.

14.     The SEB for entry ARV-0661848-7 was not signed by the principal Fast Track Merchants, Inc., or its designated agent. Consolidated Complaint at 15. Answer at 15. Inspection of SEB for entry ARV-0661848-7 set out at Confidential Exhibit A to Plaintiff's Memorandum in Support of its Motion for Summary Judgment ("*Pl Conf. Ex. A*"). *Pl Ex. C* at 202-03.

15.     The SEB for entry ARV-0661848-7 does not identify the transaction secured by the bond. Consolidated Complaint at 16. Answer at 16. Inspection of SEB for entry ARV-0661848-7 in *Pl Conf. Ex. A*. *Pl Ex. C* at 202-03.

16.     The SEB for entry ARV-0661848-7 does not identify the state of incorporation of the principal Fast Track Merchants, Inc. and as such fails to provide its complete legal designation. Inspection of SEB for entry ARV-0661848-7 in *Pl Conf. Ex. A*.

17.     The SEB for entry ARV-0661754-7 was not signed by the principal Fast Track Merchants, Inc., or its designated agent. Consolidated Complaint at 18. Answer at 18. Inspection of SEB for entry ARV-0661754-7 in *Pl Conf. Ex. A*. *Pl Ex. C* at 201.

3

18.     The SEB for entry ARV-0661754-7 does not identify the transaction secured by the bond. Consolidated Complaint at 19. Answer at 19. Inspection of SEB for entry ARV-0661754-7 in *Pl Conf. Ex. A. Pl Ex. C* at 202.

19.     The SEB for entry ARV-0661754-7 does not identify the state of incorporation of the principal Fast Track Merchants, Inc. and as such fails to provide its complete legal designation. Inspection of SEB for entry ARV-0661754-7 in *Pl Conf. Ex. A.*

20.     The SEB for entry ARV-0662172-1 was not signed by the principal Fast Track Merchants, Inc., or its designated agent. Consolidated Complaint at 21. Answer at 21. Inspection of SEB for entry ARV-0662172-1 in *Pl Conf. Ex. A. Pl Ex. C* at 204.

21.     The SEB for entry ARV-0662172-1 does not identify the transaction secured by the bond. Consolidated Complaint at 22. Answer at 22. Inspection of SEB for entry ARV-0662172-1 in *Pl Conf. Ex. A. Pl Ex. C* at 205.

22.     The SEB for entry ARV-0662172-1 does not identify the state of incorporation of the principal Fast Track Merchants, Inc. and as such fails to provide its complete legal designation. Inspection of SEB for entry ARV-0662172-1 in *Pl Conf. Ex. A.*

23.     The SEB for entry ARV-0662370-1 was not signed by the principal Fast Track Merchants, Inc., or its designated agent. Consolidated Complaint at 24. Answer at 24. Inspection of SEB for entry ARV-0662370-1. *Pl Ex. C* at 207 in *Pl Conf. Ex. A.*

24.     The SEB for entry ARV-0662370-1 does not identify the transaction secured by the bond. Consolidated Complaint at 25. Answer at 25. Inspection of SEB for entry ARV-0662370-1 in *Pl Conf. Ex. A. Pl Ex. C* at 206.

25.     The SEB for entry ARV-0662370-1 does not identify the state of incorporation of the principal Fast Track Merchants, Inc. and as such fails to provide its complete legal designation. Inspection of SEB for entry ARV-0662370-1 in *Pl Conf. Ex. A.*

26.     The SEB for entry ARV-0662370-1 does not identify the date of execution of the bond. Consolidated Complaint at 27. Answer at 27. Inspection of SEB for entry ARV-0662370-1 in *Pl Conf. Ex. A. Pl Ex. C* at 206.

27.     The SEB for entry ARV-0662370-1 does not identify the date of the transaction being bonded. Consolidated Complaint at 28. Answer at 28. Inspection of SEB for entry ARV-0662370-1 in *Pl Conf. Ex. A. Pl Ex. C* at 207.

28.     The SEB for entry JM4-0114602-3 does not identify the date of execution of the bond. Consolidated Complaint at 29. Answer at 29. Inspection of SEB for entry JM4-0114602-3 in *Pl Conf. Ex. A. Pl Ex. C* at 198.

29.     The SEB for entry JM4-0114602-3 does not identify the state of incorporation of the principal Fast Track Merchants, Inc. and as such fails to provide its complete legal designation. Inspection of SEB for entry JM4-0114602-3 in *Pl Conf. Ex. A. Pl Ex. C* at 198.

30.     The SEB for entry 316-0604450-6 does not identify the transaction secured by the bond. Consolidated Complaint at 42. Answer at 42. Inspection of SEB for entry 316-0604450-6 in *Pl Conf. Ex. A. Pl Ex. C* at 207-08.

31.     The SEB for entry 316-0604450-6 does not identify the state of incorporation of the principal Jinfu Trading (USA), Inc. and as such fails to provide its complete legal designation. Inspection of SEB for entry 316-0604450-6 in *Pl Conf. Ex. A. Pl Ex. C* at 207-08.

32.     The SEB for entry JN7-0332527-2 does not identify a limit of liability, also known as a penal amount, for the bond. Consolidated Complaint at 43. Answer at 43. Inspection of SEB for entry JN7-0332527-2 in *Pl Conf. Ex. A.*

33.     The SEB for entry JN7-0332527-2 does not identify the state of incorporation of the principal Jinfu Trading (USA), Inc., and as such fails to provide its complete legal designation. Inspection of SEB for entry JN7-0332527-2 in *Pl Conf. Ex. A. Pl Ex. C* at 208-09.

34.     The SEB for entry 038-0608215-6 does not identify the date of execution of the bond. Consolidated Complaint at 67. Answer at 67. Inspection of SEB for entry 038-0608215-6 in *Pl Conf. Ex. A. Pl Ex. C* at 215-16.

35.     The SEB for entry 038-0608215-6 does not identify the state of incorporation of the principal Farmland Food Trading Inc., and as such fails to provide its complete legal designation. Inspection of SEB for entry 038-0608215-6 in *Pl Conf. Ex. A. Pl Ex. C* at 215-16.

36.     The SEB for entry 038-0608308-9 does not identify the date of execution of the bond. Consolidated Complaint at 67. Answer at 67. Inspection of SEB for entry 038-0608308-9 in *Pl Conf. Ex. A. Pl Ex. C* at 214-15.

37.     The SEB for entry 038-0608308-9 does not identify the state of incorporation of the principal Farmland Food Trading Inc., and as such fails to provide its complete legal designation. Inspection of SEB for entry 038-0608308-9 in *Pl Conf. Ex. A.*

38.     The SEB for entry 038-0608309-7 does not identify the date of execution of the bond. Consolidated Complaint at 67. Answer at 67. Inspection of SEB for entry 038-0608309-7 in *Pl Conf. Ex. A. Pl Ex. C* at 213-14.

39.     The SEB for entry 038-0608309-7 does not identify the state of incorporation of the principal Farmland Food Trading Inc., and as such fails to provide its complete legal designation. Inspection of SEB for entry 038-0608309-7 in *Pl Conf. Ex. A. Pl Ex. C* at 213-14.

40.     The SEB for entry 038-0608657-9 does not identify the date of execution of the bond. Consolidated Complaint at 67. Answer at 67. Inspection of SEB for entry 038-0608657-9 in *Pl Conf. Ex. A. Pl Ex. C* at 212-13.

41.     The SEB for entry 038-0608657-9 was not signed by the principal Farmland Food Trading Inc., or its designated agent. Inspection of SEB for entry 038-0608657-9 in *Pl Conf. Ex. A. Pl Ex. C* at 212-13.

42.     The SEB for entry 038-0608658-7 does not identify the date of execution of the bond. Consolidated Complaint at 67. Answer at 67. Inspection of SEB for entry 038-0608658-7 in *Pl Conf. Ex. A. Pl Ex. C* at 211.

43.     The SEB for entry 038-0608658-7 was not signed by the principal Farmland Food Trading Inc., or its designated agent. Inspection of SEB for entry 038-0608658-7 in *Pl Conf. Ex. A. Pl Ex. C* at 211.

44.     The SEB for entry 038-0608658-7 does not identify the date of the transaction being bonded. Inspection of SEB for entry 038-0608658-7 in *Pl Conf. Ex. A. Pl Ex. C* at 211.

45.     The SEB for entry 038-0608659-5 does not identify the date of execution of the bond. Consolidated Complaint at 67. Answer at 67. Inspection of SEB for entry 038-0608659-5 in *Pl Conf. Ex. A. Pl Ex. C* at 209-10.

46.     The SEB for entry 038-0608659-5 was not signed by the principal Farmland Food Trading Inc., or its designated agent. Inspection of SEB for entry 038-0608659-5 in *Pl Conf. Ex. A. Pl Ex. C* at 209-10.

47.     The SEB for entry ES2-0041927-4 was not signed by Hartford as surety or by its designated agent. Consolidated Complaint at 80. Answer at 80. Inspection of SEB for entry ES2-0041927-4 in *Pl Conf. Ex. A*. *Pl Ex. C* at 218-19.

48.     The SEB for entry ES2-0053112-8 was not signed by Hartford as surety or by its designated agent. Consolidated Complaint at 79. Answer at 79. Inspection of SEB for entry ES2-0053112-8 in *Pl Conf. Ex. A*. *Pl Ex. C* at 217-18.

49.     The SEB for entry 669-2817243-7 does not identify the corporate status and the state of incorporation of the principal SCS Marketing Inc., and as such fails to provide its complete legal designation. Consolidated Complaint at 92. Answer at 92. Inspection of SEB for entry 669-2817243-7 in *Pl Conf. Ex. A*. *Pl Ex. C* at 219-20.

50.     The SEB for entry 316-0523462-9 does not set forth the printed name of the person signing the bond on behalf of the principal Jinfu Trading (USA), Inc. Inspection of SEB for entry 316-0523462-9 in *Pl Conf. Ex. A*. *Pl Ex. C* at 234-35.

51.     The SEB for entry 316-0523462-9 does not set forth the written signature of the principal Jinfu Trading (USA), Inc., or its designated agent, but rather states the initials "MP." Inspection of SEB for entry 316-0523462-9 in *Pl Conf. Ex. A*.

52.     The SEB for entry 316-0523462-9 does not identify the state of incorporation of the principal Jinfu Trading (USA), Inc., and as such fails to provide its complete legal designation. Inspection of SEB for entry 316-0523462-9 in *Pl Conf. Ex. A*. *Pl Ex. C* at 234-35.

53.     The SEB for entry 316-0523464-5 does not set forth the printed name of the person signing the bond on behalf of the principal Jinfu Trading (USA), Inc. Inspection of SEB for entry 316-0523464-5 in *Pl Conf. Ex. A*. *Pl Ex. C* at 234-35.

54.     The SEB for entry 316-0523464-5 does not set forth the written signature of the principal Jinfu Trading (USA), Inc., or its designated agent, but rather states the initials "MP." Inspection of SEB for entry 316-0523464-5 in *Pl Conf. Ex. A.*

55.     The SEB for entry 316-0523464-5 does not identify the state of incorporation of the principal Jinfu Trading (USA), Inc., and as such fails to provide its complete legal designation. Inspection of SEB for entry 316-0523464-5 in *Pl Conf. Ex. A. Pl Ex. C* at 234-35.

56.     The SEB for entry 316-0523465-2 does not set forth the printed name of the person signing the bond on behalf of the principal Jinfu Trading (USA), Inc. Inspection of SEB for entry 316-0523465-2 in *Pl Conf. Ex. A. Pl Ex. C* at 234-35.

57.     The SEB for entry 316-0523465-2 does not set forth the written signature of the principal Jinfu Trading (USA), Inc., or its designated agent, but rather states the initials "MP." Inspection of SEB for entry 316-0523465-2 in *Pl Conf. Ex. A.*

58.     The SEB for entry 316-0523465-2 does not identify the state of incorporation of the principal Jinfu Trading (USA), Inc., and as such fails to provide its complete legal designation. Inspection of SEB for entry 316-0523465-2 in *Pl Conf. Ex. A. Pl Ex. C* at 234-35.

59.     The SEB for entry 316-0523466-0 does not set forth the printed name of the person signing the bond on behalf of the principal Jinfu Trading (USA), Inc. Inspection of SEB for entry 316-0523466-0 in *Pl Conf. Ex. A. Pl Ex. C* at 234-35.

60.     The SEB for entry 316-0523466-0 does not set forth the written signature of the principal Jinfu Trading (USA), Inc., or its designated agent, but rather states the initials "MP." Inspection of SEB for entry 316-0523466-0 in *Pl Conf. Ex. A.*

61.     The SEB for entry 316-0523466-0 does not identify the state of incorporation of the principal Jinfu Trading (USA), Inc., and as such fails to provide its complete legal designation. Inspection of SEB for entry 316-0523466-0 in *Pl Conf. Ex. A. Pl Ex. C* at 234-35.

62.     The SEB for entry 316-0523467-8 does not set forth the printed name of the person signing the bond on behalf of the principal Jinfu Trading (USA), Inc. Inspection of SEB for entry 316-0523467-8 in *Pl Conf. Ex. A. Pl Ex. C* at 234-35.

63.     The SEB for entry 316-0523467-8 does not set forth the written signature of the principal Jinfu Trading (USA), Inc., or its designated agent, but rather states the initials "MP." Inspection of SEB for entry 316-0523467-8 in *Pl Conf. Ex. A.*

64.     The SEB for entry 316-0523467-8 does not identify the state of incorporation of the principal Jinfu Trading (USA), Inc., and as such fails to provide its complete legal designation. Inspection of SEB for entry 316-0523467-8 in *Pl Conf. Ex. A. Pl Ex. C* at 234-35.

65.     The SEB for entry 316-0523468-6 does not set forth the printed name of the person signing the bond on behalf of the principal Jinfu Trading (USA), Inc. Inspection of SEB for entry 316-0523468-6 in *Pl Conf. Ex. A. Pl Ex. C* at 234-35.

66.     The SEB for entry 316-0523468-6 does not set forth the written signature of the principal Jinfu Trading (USA), Inc., or its designated agent, but rather states the initials "MP." Inspection of SEB for entry 316-0523468-6 in *Pl Conf. Ex. A.*

67.     The SEB for entry 316-0523468-6 does not identify the state of incorporation of the principal Jinfu Trading (USA), Inc., and as such fails to provide its complete legal designation. Inspection of SEB for entry 316-0523468-6 in *Pl Conf. Ex. A. Pl Ex. C* at 234-35.

68.     The SEB for entry 316-0523469-4 does not set forth the printed name of the person signing the bond on behalf of the principal Jinfu Trading (USA), Inc.  Inspection of SEB for entry 316-0523469-4 in *Pl Conf. Ex. A.  Pl Ex. C* at 234-35.

69.     The SEB for entry 316-0523469-4 does not set forth the written signature of the principal Jinfu Trading (USA), Inc., or its designated agent, but rather states the initials "MP." Inspection of SEB for entry 316-0523469-4 in *Pl Conf. Ex. A.*

70.     The SEB for entry 316-0523469-4 does not identify the state of incorporation of the principal Jinfu Trading (USA), Inc., and as such fails to provide its complete legal designation.  Inspection of SEB for entry 316-0523469-4 in *Pl Conf. Ex. A.  Pl Ex. C* at 234-35.

71.     The SEB for entry 316-0523470-2 does not set forth the printed name of the person signing the bond on behalf of the principal Jinfu Trading (USA), Inc.  Inspection of SEB for entry 316-0523470-2 in *Pl Conf. Ex. A.  Pl Ex. C* at 234-35.

72.     The SEB for entry 316-0523470-2 does not set forth the written signature of the principal Jinfu Trading (USA), Inc., or its designated agent, but rather states the initials "MP." Inspection of SEB for entry 316-0523470-2 in *Pl Conf. Ex. A.*

73.     The SEB for entry 316-0523470-2 does not identify the state of incorporation of the principal Jinfu Trading (USA), Inc., and as such fails to provide its complete legal designation.  Inspection of SEB for entry 316-0523470-2 in *Pl Conf. Ex. A.  Pl Ex. C* at 234-35.

74.     The SEB for entry 316-0523471-0 does not set forth the printed name of the person signing the bond on behalf of the principal Jinfu Trading (USA), Inc.  Inspection of SEB for entry 316-0523471-0 in *Pl Conf. Ex. A.  Pl Ex. C* at 234-35.

75.     The SEB for entry 316-0523471-0 does not set forth the written signature of the principal Jinfu Trading (USA), Inc., or its designated agent, but rather states the initials "MP." Inspection of SEB for entry 316-0523471-0 in *Pl Conf. Ex. A.*

76.     The SEB for entry 316-0523471-0 does not identify the state of incorporation of the principal Jinfu Trading (USA), Inc., and as such fails to provide its complete legal designation. Inspection of SEB for entry 316-0523471-0 in *Pl Conf. Ex. A. Pl Ex. C* at 234-35.

77.     The SEB for entry 316-0523472-8 does not set forth the printed name of the person signing the bond on behalf of the principal Jinfu Trading (USA), Inc.  Inspection of SEB for entry 316-0523472-8 in *Pl Conf. Ex. A. Pl Ex. C* at 234-35.

78.     The SEB for entry 316-0523472-8 does not set forth the written signature of the principal Jinfu Trading (USA), Inc., or its designated agent, but rather states the initials "MP." Inspection of SEB for entry 316-0523472-8 in *Pl Conf. Ex. A.*

79.     The SEB for entry 316-0523472-8 does not identify the state of incorporation of the principal Jinfu Trading (USA), Inc., and as such fails to provide its complete legal designation. Inspection of SEB for entry 316-0523472-8 in *Pl Conf. Ex. A. Pl Ex. C* at 234-35.

80.     The SEB for entry 316-0523473-6 does not set forth the printed name of the person signing the bond on behalf of the principal Jinfu Trading (USA), Inc.  Inspection of SEB for entry 316-0523473-6 in *Pl Conf. Ex. A. Pl Ex. C* at 234-35.

81.     The SEB for entry 316-0523473-6 does not set forth the written signature of the principal Jinfu Trading (USA), Inc., or its designated agent, but rather states the initials "MP." Inspection of SEB for entry 316-0523473-6 in *Pl Conf. Ex. A.*

82.     The SEB for entry 316-0523473-6 does not identify the state of incorporation of the principal Jinfu Trading (USA), Inc., and as such fails to provide its complete legal designation. Inspection of SEB for entry 316-0523473-6 in *Pl Conf. Ex. A. Pl Ex. C* at 234-35.

83.     The SEB for entry 316-0523474-4 does not set forth the printed name of the person signing the bond on behalf of the principal Jinfu Trading (USA), Inc.  Inspection of SEB for entry 316-0523474-4 in *Pl Conf. Ex. A. Pl Ex. C* at 234-35.

84.     The SEB for entry 316-0523474-4 does not set forth the written signature of the principal Jinfu Trading (USA), Inc., or its designated agent, but rather states the initials "MP." Inspection of SEB for entry 316-0523474-4 in *Pl Conf. Ex. A.*

85.     The SEB for entry 316-0523474-4 does not identify the state of incorporation of the principal Jinfu Trading (USA), Inc., and as such fails to provide its complete legal designation. Inspection of SEB for entry 316-0523474-4 in *Pl Conf. Ex. A. Pl Ex. C* at 234-35.

86.     The SEB for entry 316-0523475-1 does not set forth the printed name of the person signing the bond on behalf of the principal Jinfu Trading (USA), Inc.  Inspection of SEB for entry 316-0523475-1 in *Pl Conf. Ex. A. Pl Ex. C* at 234-35.

87.     The SEB for entry 316-0523475-1 does not set forth the written signature of the principal Jinfu Trading (USA), Inc., or its designated agent, but rather states the initials "MP." Inspection of SEB for entry 316-0523475-1 in *Pl Conf. Ex. A.*

88.     The SEB for entry 316-0523475-1 does not identify the state of incorporation of the principal Jinfu Trading (USA), Inc., and as such fails to provide its complete legal designation. Inspection of SEB for entry 316-0523475-1 in *Pl Conf. Ex. A. Pl Ex. C* at 234-35.

89.     The SEB for entry 316-0523476-9 does not set forth the printed name of the person signing the bond on behalf of the principal Jinfu Trading (USA), Inc.  Inspection of SEB for entry 316-0523476-9 in *Pl Conf. Ex. A*.  *Pl Ex. C* at 234-35.

90.     The SEB for entry 316-0523476-9 does not set forth the written signature of the principal Jinfu Trading (USA), Inc., or its designated agent, but rather states the initials "MP." Inspection of SEB for entry 316-0523476-9 in *Pl Conf. Ex. A*.

91.     The SEB for entry 316-0523476-9 does not identify the state of incorporation of the principal Jinfu Trading (USA), Inc., and as such fails to provide its complete legal designation.  Inspection of SEB for entry 316-0523476-9 in *Pl Conf. Ex. A*.  *Pl Ex. C* at 234-35.

92.     The SEB for entry 316-0523477-7 does not set forth the printed name of the person signing the bond on behalf of the principal Jinfu Trading (USA), Inc.  Inspection of SEB for entry 316-0523477-7 in *Pl Conf. Ex. A*.  *Pl Ex. C* at 234-35.

93.     The SEB for entry 316-0523477-7 does not set forth the written signature of the principal Jinfu Trading (USA), Inc., or its designated agent, but rather states the initials "MP." Inspection of SEB for entry 316-0523477-7 in *Pl Conf. Ex. A*.

94.     The SEB for entry 316-0523477-7 does not identify the state of incorporation of the principal Jinfu Trading (USA), Inc., and as such fails to provide its complete legal designation.  Inspection of SEB for entry 316-0523477-7 in *Pl Conf. Ex. A*.  *Pl Ex. C* at 234-35.

95.     The SEB for entry 316-0523452-0 does not set forth the printed name of the person signing the bond on behalf of the principal Jinfu Trading (USA), Inc., or its designated agent, but rather states the initials "MP."  Inspection of SEB for entry 316-0523452-0 in *Pl Conf. Ex. A*.  *Pl Ex. C* at 234-35.

14

96.     The SEB for entry 316-0523452-0 does not set forth the written signature of the principal Jinfu Trading (USA), Inc., or its designated agent, but rather states the initials "MP." Inspection of SEB for entry 316-0523452-0 in *Pl Conf. Ex. A.*

97.     The SEB for entry 316-0523452-0 does not identify the state of incorporation of the principal Jinfu Trading (USA), Inc., and as such fails to provide its complete legal designation. Inspection of SEB for entry 316-0523452-0 in *Pl Conf. Ex. A. Pl Ex. C* at 234-35.

98.     The SEB for entry 316-0516897-5 does not set forth the printed name of the person signing the bond on behalf of the principal Jinfu Trading (USA), Inc. Inspection of SEB for entry 316-0516897-5 in *Pl Conf. Ex. A. Pl Ex. C* at 234-35.

99.     The SEB for entry 316-0516897-5 does not set forth the written signature of the principal Jinfu Trading (USA), Inc., or its designated agent, but rather states the initials "MP." Inspection of SEB for entry 316-0516897-5 in *Pl Conf. Ex. A.*

100.    The SEB for entry 316-0516897-5 does not identify the state of incorporation of the principal Jinfu Trading (USA), Inc., and as such fails to provide its complete legal designation. Inspection of SEB for entry 316-0516897-5 in *Pl Conf. Ex. A. Pl Ex. C* at 234-35.

101.    The SEB for entry 316-0516898-3 does not set forth the printed name of the person signing the bond on behalf of the principal Jinfu Trading (USA), Inc. Inspection of SEB for entry 316-0516898-3 in *Pl Conf. Ex. A. Pl Ex. C* at 234-35.

102.    The SEB for entry 316-0516898-3 does not set forth the written signature of the principal Jinfu Trading (USA), Inc., or its designated agent, but rather states the initials "MP." Inspection of SEB for entry 316-0516898-3 in *Pl Conf. Ex. A.*

103.   The SEB for entry 316-0516898-3 does not identify the state of incorporation of the principal Jinfu Trading (USA), Inc., and as such fails to provide its complete legal designation. Inspection of SEB for entry 316-0516898-3 in *Pl Conf. Ex. A. Pl Ex. C* at 234-35.

104.   The SEB for entry 316-0516863-7 does not set forth the printed name of the person signing the bond on behalf of the principal Jinfu Trading (USA), Inc.  Inspection of SEB for entry 316-0516863-7 in *Pl Conf. Ex. A. Pl Ex. C* at 234-35.

105.   The SEB for entry 316-0516863-7 does not set forth the written signature of the principal Jinfu Trading (USA), Inc., or its designated agent, but rather states the initials "MP." Inspection of SEB for entry 316-0516863-7 in *Pl Conf. Ex. A.*

106.   The SEB for entry 316-0516863-7 does not identify the state of incorporation of the principal Jinfu Trading (USA), Inc., and as such fails to provide its complete legal designation. Inspection of SEB for entry 316-0516863-7 in *Pl Conf. Ex. A. Pl Ex. C* at 234-35.

107.   The SEB for entry 316-0516864-5 does not set forth the printed name of the person signing the bond on behalf of the principal Jinfu Trading (USA), Inc.  Inspection of SEB for entry 316-0516864-5 in *Pl Conf. Ex. A. Pl Ex. C* at 234-35.

108.   The SEB for entry 316-0516864-5 does not set forth the written signature of the principal Jinfu Trading (USA), Inc., or its designated agent, but rather states the initials "MP." Inspection of SEB for entry 316-0516864-5 in *Pl Conf. Ex. A.*

109.   The SEB for entry 316-0516864-5 does not identify the state of incorporation of the principal Jinfu Trading (USA), Inc., and as such fails to provide its complete legal designation. Inspection of SEB for entry 316-0516864-5 in *Pl Conf. Ex. A. Pl Ex. C* at 234-35.

110.    The SEB for entry 316-0516865-2 does not set forth the printed name of the person signing the bond on behalf of the principal Jinfu Trading (USA), Inc.  Inspection of SEB for entry 316-0516865-2 in *Pl Conf. Ex. A.  Pl Ex. C* at 234-35.

111.    The SEB for entry 316-0516865-2 does not set forth the written signature of the principal Jinfu Trading (USA), Inc., or its designated agent, but rather states the initials "MP." Inspection of SEB for entry 316-0516865-2 in *Pl Conf. Ex. A.*

112.    The SEB for entry 316-0516865-2 does not identify the state of incorporation of the principal Jinfu Trading (USA), Inc., and as such fails to provide its complete legal designation.  Inspection of SEB for entry 316-0516865-2 in *Pl Conf. Ex. A.  Pl Ex. C* at 234-35.

113.    The SEB for entry 316-0516866-0 does not set forth the printed name of the person signing the bond on behalf of the principal Jinfu Trading (USA), Inc.  Inspection of SEB for entry 316-0516866-0 in *Pl Conf. Ex. A.  Pl Ex. C* at 234-35.

114.    The SEB for entry 316-0516866-0 does not set forth the written signature of the principal Jinfu Trading (USA), Inc., or its designated agent, but rather states the initials "MP." Inspection of SEB for entry 316-0516866-0 in *Pl Conf. Ex. A.*

115.    The SEB for entry 316-0516866-0 does not identify the state of incorporation of the principal Jinfu Trading (USA), Inc., and as such fails to provide its complete legal designation.  Inspection of SEB for entry 316-0516866-0 in *Pl Conf. Ex. A.  Pl Ex. C* at 234-35.

116.    The SEB for entry 3316-0516867-8 does not set forth the printed name of the person signing the bond on behalf of the principal Jinfu Trading (USA), Inc.  Inspection of SEB for entry 316-0516867-8 in *Pl Conf. Ex. A.  Pl Ex. C* at 234-35.

117.    The SEB for entry 3316-0516867-8 does not set forth the written signature of the principal Jinfu Trading (USA), Inc., or its designated agent, but rather states the initials "MP." Inspection of SEB for entry 316-0516867-8 in *Pl Conf. Ex. A*.

118.    The SEB for entry 316-0516867-8 does not identify the state of incorporation of the principal Jinfu Trading (USA), Inc., and as such fails to provide its complete legal designation.  Inspection of SEB for entry 316-0516867-8 in *Pl Conf. Ex. A*.  *Pl Ex. C* at 234-35.

119.    The SEB for entry 316-0516868-6 does not set forth the printed name of the person signing the bond on behalf of the principal Jinfu Trading (USA), Inc.  Inspection of SEB for entry 316-0516868-6 in *Pl Conf. Ex. A*.  *Pl Ex. C* at 234-35.

120.    The SEB for entry 316-0516868-6 does not set forth the written signature of the principal Jinfu Trading (USA), Inc., or its designated agent, but rather states the initials "MP." Inspection of SEB for entry 316-0516868-6 in *Pl Conf. Ex. A*.

121.    The SEB for entry 316-0516868-6 does not identify the state of incorporation of the principal Jinfu Trading (USA), Inc., and as such fails to provide its complete legal designation.  Inspection of SEB for entry 316-0516868-6 in *Pl Conf. Ex. A*.  *Pl Ex. C* at 234-35.

122.    The SEB for entry 316-0516869-4 does not set forth the printed name of the person signing the bond on behalf of the principal Jinfu Trading (USA), Inc.  Inspection of SEB for entry 316-0516869-4 in *Pl Conf. Ex. A*.  *Pl Ex. C* at 229.

123.    The SEB for entry 316-0516869-4 does not set forth the written signature of the principal Jinfu Trading (USA), Inc., or its designated agent, but rather states the initials "MP." Inspection of SEB for entry 316-0516869-4 in *Pl Conf. Ex. A*.

18

124.    The SEB for entry 316-0516869-4 does not identify the state of incorporation of the principal Jinfu Trading (USA), Inc., and as such fails to provide its complete legal designation. Inspection of SEB for entry 316-0516869-4 in *Pl Conf. Ex. A. Pl Ex. C* at 229.

125.    The SEB for entry 316-0516870-2 does not set forth the printed name of the person signing the bond on behalf of the principal Jinfu Trading (USA), Inc.  Inspection of SEB for entry 316-0516870-2 in *Pl Conf. Ex. A.  Pl Ex. C* at 234-35.

126.    The SEB for entry 316-0516870-2 does not set forth the written signature of the principal Jinfu Trading (USA), Inc., or its designated agent, but rather states the initials "MP." Inspection of SEB for entry 316-0516870-2 in *Pl Conf. Ex. A.*

127.    The SEB for entry 316-0516870-2 does not identify the state of incorporation of the principal Jinfu Trading (USA), Inc., and as such fails to provide its complete legal designation. Inspection of SEB for entry 316-0516870-2 in *Pl Conf. Ex. A.  Pl Ex. C* at 234-35.

128.    The SEB for entry 316-0516871-0 does not set forth the printed name of the person signing the bond on behalf of the principal Jinfu Trading (USA), Inc. Inspection of SEB for entry 316-0516871-0 in *Pl Conf. Ex. A.  Pl Ex. C* at 234-35.

129.    The SEB for entry 316-0516871-0 does not set forth the written signature of the principal Jinfu Trading (USA), Inc., or its designated agent, but rather states the initials "MP." Inspection of SEB for entry 316-0516871-0 in *Pl Conf. Ex. A.*

130.    The SEB for entry 316-0516871-0 does not identify the state of incorporation of the principal Jinfu Trading (USA), Inc., and as such fails to provide its complete legal designation. Inspection of SEB for entry 316-0516871-0 in *Pl Conf. Ex. A.  Pl Ex. C* at 234-35.

131.    The SEB for entry 316-0516872-8 does not set forth the printed name of the person signing the bond on behalf of the principal Jinfu Trading (USA), Inc.  Inspection of SEB for entry 316-0516872-8 in *Pl Conf. Ex. A. Pl Ex. C* at 234-35.

132.    The SEB for entry 316-0516872-8 does not set forth the written signature of the principal Jinfu Trading (USA), Inc., or its designated agent, but rather states the initials "MP." Inspection of SEB for entry 316-0516872-8 in *Pl Conf. Ex. A.*

133.    The SEB for entry 316-0516872-8 does not identify the state of incorporation of the principal Jinfu Trading (USA), Inc., and as such fails to provide its complete legal designation.  Inspection of SEB for entry 316-0516872-8 in *Pl Conf. Ex. A. Pl Ex. C* at 234-35.

134.    The SEB for entry 316-0516873-6 does not set forth the printed name of the person signing the bond on behalf of the principal Jinfu Trading (USA), Inc.  Inspection of SEB for entry 316-0516873-6 in *Pl Conf. Ex. A. Pl Ex. C* at 226.

135.    The SEB for entry 316-0516873-6 does not set forth the written signature of the principal Jinfu Trading (USA), Inc., or its designated agent, but rather states the initials "MP." Inspection of SEB for entry 316-0516873-6 in *Pl Conf. Ex. A.*

136.    The SEB for entry 316-0516873-6 does not identify the state of incorporation of the principal Jinfu Trading (USA), Inc., and as such fails to provide its complete legal designation.  Inspection of SEB for entry 316-0516873-6 in *Pl Conf. Ex. A. Pl Ex. C* at 226.

137.    The SEB for entry 316-0516874-4 does not set forth the printed name of the person signing the bond on behalf of the principal Jinfu Trading (USA), Inc.  Inspection of SEB for entry 316-0516874-4 in *Pl Conf. Ex. A. Pl Ex. C* at 234-35.

138.    The SEB for entry 316-0516874-4 does not set forth the written signature of the principal Jinfu Trading (USA), Inc., or its designated agent, but rather states the initials "MP." Inspection of SEB for entry 316-0516874-4 in *Pl Conf. Ex. A.*

139.    The SEB for entry 316-0516874-4 does not identify the state of incorporation of the principal Jinfu Trading (USA), Inc., and as such fails to provide its complete legal designation. Inspection of SEB for entry 316-0516874-4 in *Pl Conf. Ex. A. Pl Ex. C* at 234-35.

140.    The SEB for entry 316-0516875-1 does not set forth the printed name of the person signing the bond on behalf of the principal Jinfu Trading (USA), Inc. Inspection of SEB for entry 316-0516875-1 in *Pl Conf. Ex. A. Pl Ex. C* at 234-35.

141.    The SEB for entry 316-0516875-1 does not set forth the written signature of the principal Jinfu Trading (USA), Inc., or its designated agent, but rather states the initials "MP." Inspection of SEB for entry 316-0516875-1 in *Pl Conf. Ex. A.*

142.    The SEB for entry 316-0516875-1 does not identify the state of incorporation of the principal Jinfu Trading (USA), Inc., and as such fails to provide its complete legal designation. Inspection of SEB for entry 316-0516875-1 in *Pl Conf. Ex. A. Pl Ex. C* at 234-35.

143.    The SEB for entry 316-0516876-9 does not set forth the printed name of the person signing the bond on behalf of the principal Jinfu Trading (USA), Inc. Inspection of SEB for entry 316-0516876-9 in *Pl Conf. Ex. A. Pl Ex. C* at 234-35.

144.    The SEB for entry 316-0516876-9 does not set forth the written signature of the principal Jinfu Trading (USA), Inc., or its designated agent, but rather states the initials "MP." Inspection of SEB for entry 316-0516876-9. in *Pl Conf. Ex. A.*

145.     The SEB for entry 316-0516876-9 does not identify the state of incorporation of the principal Jinfu Trading (USA), Inc., and as such fails to provide its complete legal designation. Inspection of SEB for entry 316-0516876-9 in *Pl Conf. Ex. A. Pl Ex. C* at 234-35.

146.     The SEB for entry 316-0516892-6 does not set forth the printed name of the person signing the bond on behalf of the principal Jinfu Trading (USA), Inc.  Inspection of SEB for entry 316-0516892-6 in *Pl Conf. Ex. A. Pl Ex. C* at 220-21.

147.     The SEB for entry 316-0516892-6 does not set forth the written signature of the principal Jinfu Trading (USA), Inc., or its designated agent, but rather states the initials "MP." Inspection of SEB for entry 316-0516892-6 in *Pl Conf. Ex. A.*

148.     The SEB for entry 316-0516892-6 does not identify the state of incorporation of the principal Jinfu Trading (USA), Inc., and as such fails to provide its complete legal designation. Inspection of SEB for entry 316-0516892-6 in *Pl Conf. Ex. A. Pl Ex. C* at 220-21.

149.     The SEB for entry 316-0516893-4 does not set forth the printed name of the person signing the bond on behalf of the principal Jinfu Trading (USA), Inc.  Inspection of SEB for entry 316-0516893-4 in *Pl Conf. Ex. A. Pl Ex. C* at 223-24.

150.     The SEB for entry 316-0516893-4 does not set forth the written signature of the principal Jinfu Trading (USA), Inc., or its designated agent, but rather states the initials "MP." Inspection of SEB for entry 316-0516893-4 in *Pl Conf. Ex. A.*

151.     The SEB for entry 316-0516893-4 does not identify the state of incorporation of the principal Jinfu Trading (USA), Inc., and as such fails to provide its complete legal designation. Inspection of SEB for entry 316-0516893-4 in *Pl Conf. Ex. A. Pl Ex. C* at 223-24.

152.   The SEB for entry 316-0516896-7 does not set forth the printed name of the person signing the bond on behalf of the principal Jinfu Trading (USA), Inc.  Inspection of SEB for entry 316-0516896-7 in *Pl Conf. Ex. A*.

153.   The SEB for entry 316-0516896-7 does not set forth the written signature of the principal Jinfu Trading (USA), Inc., or its designated agent, but rather states the initials "MP." Inspection of SEB for entry 316-0516896-7 in *Pl Conf. Ex. A*.

154.   The SEB for entry 316-0516896-7 does not identify the state of incorporation of the principal Jinfu Trading (USA), Inc., and as such fails to provide its complete legal designation.  Inspection of SEB for entry 316-0516896-7 in *Pl Conf. Ex. A*.

155.   The SEB for entry 316-0523457-9 does not set forth the printed name of the person signing the bond on behalf of the principal Jinfu Trading (USA), Inc.  Inspection of SEB for entry 316-0523457-9 in *Pl Conf. Ex. A*.  *Pl Ex. C* at 229-30.

156.   The SEB for entry 316-0523457-9 does not set forth the written signature of the principal Jinfu Trading (USA), Inc., or its designated agent, but rather states the initials "TH." Inspection of SEB for entry 316-0523457-9 in *Pl Conf. Ex. A*.

157.   The SEB for entry 316-0523431-4 does not set forth the printed name of the person signing the bond on behalf of the principal Jinfu Trading (USA), Inc.  Inspection of SEB for entry 316-0523431-4 in *Pl Conf. Ex. A*.  *Pl Ex. C* at 234.

158.   The SEB for entry 316-0523431-4 does not set forth the written signature of the principal Jinfu Trading (USA), Inc., or its designated agent, but rather states the initials "TH." Inspection of SEB for entry 316-0523431-4 in *Pl Conf. Ex. A*.

159.    The SEB for entry 316-0523432-2 does not set forth the printed name of the person signing the bond on behalf of the principal Jinfu Trading (USA), Inc.  Inspection of SEB for entry 316-0523432-2 in *Pl Conf. Ex. A*.  *Pl Ex. C* at 234.

160.    The SEB for entry 316-0523432-2 does not set forth the written signature of the principal Jinfu Trading (USA), Inc., or its designated agent, but rather states the initials "TH." Inspection of SEB for entry 316-0523432-2 in *Pl Conf. Ex. A*.

161.    The SEB for entry 316-0523453-8 does not set forth the printed name of the person signing the bond on behalf of the principal Jinfu Trading (USA), Inc.  Inspection of SEB for entry 316-0523453-8 in *Pl Conf. Ex. A*.  *Pl Ex. C* at 232-33.

162.    The SEB for entry 316-0523453-8 does not set forth the written signature of the principal Jinfu Trading (USA), Inc., or its designated agent, but rather states the initials "TH." Inspection of SEB for entry 316-0523453-8 in *Pl Conf. Ex. A*.

163.    The SEB for entry 316-0523454-6 does not set forth the printed name of the person signing the bond on behalf of the principal Jinfu Trading (USA), Inc.  Inspection of SEB for entry 316-0523454-6 in *Pl Conf. Ex. A*.  *Pl Ex. C* at 234.

164.    The SEB for entry 316-0523454-6 does not set forth the written signature of the principal Jinfu Trading (USA), Inc., or its designated agent, but rather states the initials "TH." Inspection of SEB for entry 316-0523454-6 in *Pl Conf. Ex. A*.

165.    The SEB for entry 316-0523455-3 does not set forth the printed name of the person signing the bond on behalf of the principal Jinfu Trading (USA), Inc.  Inspection of SEB for entry 316-0523455-3 in *Pl Conf. Ex. A*.  *Pl Ex. C* at 234.

166.    The SEB for entry 316-0523455-3 does not set forth the written signature of the principal Jinfu Trading (USA), Inc., or its designated agent, but rather states the initials "TH." Inspection of SEB for entry 316-0523455-3 in *Pl Conf. Ex. A*.

167.    The SEB for entry 316-0523423-1 does not set forth the printed name of the person signing the bond on behalf of the principal Jinfu Trading (USA), Inc.  Inspection of SEB for entry 316-0523423-1 in *Pl Conf. Ex. A*.  *Pl Ex. C* at 234.

168.    The SEB for entry 316-0523423-1 does not set forth the written signature of the principal Jinfu Trading (USA), Inc., or its designated agent, but rather states the initials "TH." Inspection of SEB for entry 316-0523423-1 in *Pl Conf. Ex. A*.

169.    The SEB for entry 316-0523428-0 does not set forth the printed name of the person signing the bond on behalf of the principal Jinfu Trading (USA), Inc.  Inspection of SEB for entry 316-0523428-0 in *Pl Conf. Ex. A*.  *Pl Ex. C* at 234.

170.    The SEB for entry 316-0523428-0 does not set forth the written signature of the principal Jinfu Trading (USA), Inc., or its designated agent, but rather states the initials "TH." Inspection of SEB for entry 316-0523428-0 in *Pl Conf. Ex. A*.

171.    The SEB for entry 316-0523429-8 does not set forth the printed name of the person signing the bond on behalf of the principal Jinfu Trading (USA), Inc.  Inspection of SEB for entry 316-0523429-8 in *Pl Conf. Ex. A*.  *Pl Ex. C* at 231-32.

172.    The SEB for entry 316-0523429-8 does not set forth the written signature of the principal Jinfu Trading (USA), Inc., or its designated agent, but rather states the initials "TH." Inspection of SEB for entry 316-0523429-8 in *Pl Conf. Ex. A*.

173.    The SEB for entry 316-0523024-7 does not set forth the printed name of the person signing the bond on behalf of the principal Jinfu Trading (USA), Inc.  Inspection of SEB for entry 316-0523024-7 in *Pl Conf. Ex. A.*

174.    The SEB for entry 316-0523024-7 does not identify the state of incorporation of the principal Jinfu Trading (USA), Inc., an as such fails to provide its complete legal designation. Inspection of SEB for entry 316-0523024-7 in *Pl Conf. Ex. A.  Pl Ex. C* at 233.

Respectfully submitted,

BARNES, RICHARDSON & COLBURN, LLP
Attorneys for Hartford Fire Insurance Co.
100 William Street, Suite 305
New York, NY 10038
Tel: (212) 725-0200
/S/ _____
        Frederic D. Van Arnam, Jr.

Dated: July 15, 2016
New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. DONALD C. POGUE, SENIOR JUDGE

HARTFORD FIRE INSURANCE COMPANY,          :

                Plaintiff,          :

                        v.          :          Consol. Court No.  09-00122

UNITED STATES          :

                Defendant,          :


## PLAINTIFF'S MEMORANDUM IN SUPPORT
## OF ITS MOTION FOR SUMMARY JUDGMENT

BARNES, RICHARDSON & COLBURN, LLP.
Frederic D. Van Arnam, Jr
Attorneys for Hartford Fire Insurance Co.
100 William Street, Suite 305
New York, NY  10038
Tel: (212) 725-0200

Dated: July 15, 2016
       New York, New York

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ......................................................................................i-ii

TABLE OF AUTHORITIES ...........................................................................iii-vi

PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR
   SUMMARY JUDGMENT ................................................................................1

BACKGROUND .................................................................................................3

     1.    Congress Authorized Customs to Prescribe Customs Bond Forms.....................3

     2.    Customs Administers the Bond Approval Process .................................................7

     3.    Customs is Required to Review Bonds for Completeness and Accuracy ...........9

     4.    Customs Failed to Maintain Adequate Controls Over the Bond
          Approval Process ........................................................................................10

     5.    Customs Improperly Accepted Incomplete and Deficient SEBs in This Case...11

STATEMENT OF UNDISPUTED FACTS ............................................................13

STATEMENT OF JURISDICTION AND STANDARD OF REVIEW ...................13

ARGUMENT .......................................................................................................14

     I.    The SEBs Do Not Comply with the Customs Regulations and
         Are Unenforceable Against the Surety ..........................................................14

         A.    Customs Regulations Require That Certain Bond Terms Be
             Included on the CF 301 ......................................................................14

         B.    Customs Should Be Bound by Its Own
             Long-Standing Practice of Rejecting Bonds That Are Incomplete ......17

     II.    The SEBs Were Not Valid and Enforceable Bond Contracts.............................19

         A.    Bond Contracts Missing Essential
             Terms Are Unenforceable as a Matter of Law.....................................19

         B.    Incomplete or Unsubscribed Bond Contracts
             are Unenforceable Under the Statute of Frauds....................................22

C.  Customs Cannot Remedy the Incomplete SEBs with Extrinsic Documents ........................................................................24

III.  Customs Acceptance of Incomplete SEBs Impaired Hartford's Suretyship Rights ...........................................................................27

CONCLUSION.................................................................................................................30

## TABLE OF AUTHORITIES

**Page**

## CASES

*Adickes v. S.H. Kress & Co.,* 398 U.S. 144 (1970)..................................................14

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986) ...........................................14

*Bell & Grant v. Bruen,* 42 U.S. 169 (1843) ...........................................................20

*Bel Pre Health Care Center, Inc. v. United States,* 24 Cl. Ct. 495 (1991) ..................19

*G.B.J. Corp. v. Eastern Ohio Paving Co.*, 139 F.3d 1080, 1085 (6th Cir. 1998)..................22, 23

*Gay v. Murphy,* 134 Mo. 98 (1896) ......................................................................23, 24

*Hamilton Secs Advisory Servs, Inc. v. United States,* 60 Fed. Cl. 144 (2004)............................19

*Hartford Fire Insurance Co. v. United States,* 544 F.3d. 1289 (Fed. Cir. 2008)........3, 13, 16, 27

*Hartford Fire Insurance Co. v. United States,* 857 F. Supp. 2d 1356 (CIT 2012)..............16, 26

*Humane Society of the United States v. Clinton,* 236 F.3d 1320 (Fed. Cir. 2001),
    *cert. denied* 84 U.S.L.W. 3664 (2016)................................................................27

*Int'l Custom Products v. United States,* 791 F.3d 1329 (Fed. Cir. 2015)..................................27

*Interstate Rock Products, Inc. v. United States,* 50 Fed. Cl. 349 (Ct. Cl. 2001),
    *aff'd per curiam,* 48 Fed. Appx. 331 (Fed. Cir. 2002)................................20, 21, 24

*Lublin Corp. v. U.S.,* 84 Fed. Cl. 678 (Fed. Cl. 2008))................................................23

*Miller v. Stewart,* 22 U.S. 680, 9 Wheat 680 (1824) ...............................................21

*National Association of Homebuilders v. Defenders of Wildlife,*
    551 U.S. 644 (2007) ..........................................................................................15

*National Surety Corp. v. United States,* 118 F.3d 1542 (Fed. Cir. 1997)...................................29

*Northwest Steel Rolling Mills v. Commissioner of Internal Revenue,*
    110 F.2d 286 (1940)............................................................................................18

*Nova Casualty Co. v. United States,* 72 Fed. Cl. 755 (2006).......................................29

*Nutt v. United States*, 12 Cl Ct. 345 (1987), *aff'd sub nom. Smithson v. United States*, 847 F.2d 791 (Fed. Cir. 1988), *cert. denied*, 488 U.S. 1004 (1989) ............................................................5

*Pearlman v. Reliance Ins., Co.*, 371 U.S. 132 (1962)...............................................................29

*Precision Pine & Timber, Inc. v. United States,* 596 F.3d 817 (Fed. Cir. 2010), *cert denied* 562 U.S. 1178 (2011)...........................................................................................................................25

*Riggs Nat'l Corp. v. Comm'r*, 295 F.3d 16 (DC Cir. 2002) ......................................................28

*Russell v. Annable*, 109 Mass 72 (1871)....................................................................................23

*Sioux Honey Assoc. v. Hartford Fire Insurance Co.*, 672 F.3d 1041 (Fed. Cir. ),
   *cert. denied*, 133 S. Ct. 126 (2012) .....................................................................................5, 25

*Sioux Honey Association v. United States,* 722 F. Supp. 2d 1342 (CIT 2010)...........................16

*Southern California Edison Co. v. United States,* 226 F.3d 1349 (Fed. Cir. 2000) .................25

*Standard Federal Bank v. United States*, 2002 WL 31947572 at 13 (Fed. Cl. 2002) ...............20

*Sun Studs, Inc. v. Applied Theory Assoc. Inc.*, 772 F.2d 1557 (Fed. Cir. 1985)...................23, 25

*Takashima USA, Inc. v. United States*, 886 F. Supp. 858 (CIT 1995) .......................................28

*Union of Concerned Scientists v. Atomic Energy Commission*, 499 F.2d 1069
   (D.C. Cir. 1974) .......................................................................................................................16

*United States v. Boecker*, 88 U.S. 652 (1874) .............................................................20, 21, 24

*United States v. Browne Vintners Co., Inc.*, 34 CCPA 112, C.A.D. 351 (1946).......................15

*United States. v. Continental Casualty Co.*, 512 F.2d 475 (5th Cir. 1975) ..............................29

*United States v. DeVisser*, 10 F. 642 (S.D.N.Y. 1882).............................................................24

*United States v. Great American Insurance Co.*, 738 F.3d 1320 (Fed. Cir. 2013)..............22, 28

*United States v. Great American Insurance. Co. of New York*, 791 F. Supp. 2d. 1337
   (CIT 2011), *aff'd in part and rev'd in part*, 738 F. 3d 1320 (Fed. Cir. 2013).........................22

*United States v. Hitachi Am., Ltd.*, 172 F.3d 1319 (Fed. Cir. 1999)..........................................22

*United States v. Utex Int'l, Inc.*, 857 F.2d 1408 (Fed. Cir. 1988)..............................................15

*United States v. Washington International Insurance Co.,* 177 F. Supp. 2d 1313 (CIT 2001) ........................................................................................................................20

*United States v. ____,* 24 F. Cas. 739 (C.C.C. Va. 1811)....................................24, 25

*Weisberg v. United States Department of Justice,* 745 F.2d 1476 (D.C. Cir. 1984) ................19


## STATUTES AND REGULATIONS

19 U.S.C. § 66.........................................................................................................3, 24

19 U.S.C. § 1514(a) ..............................................................................................12, 13

19 U.S.C. § 1623................................................................................................1, 2, 3, 24

28 U.S.C. § 1581(a) ..............................................................................................13, 27

28 U.S.C. § 2640(a) .....................................................................................................14

19 CFR § 113.11 ................................................................................................. *passim*

19 C.F.R. § 113.21 .............................................................................................. *passim*

19 CFR § 113.24 ..........................................................................................................18

19 CFR § 113.25 ......................................................................................................5, 17

19 CFR § 113.26 ......................................................................................................4, 15

19 CFR § 113.32 ............................................................................................................6

19 CFR § 113.33 ................................................................................................5, 15, 23

19 CFR § 113.37 ............................................................................................5, 15, 17, 23

*An Act for the Prevention of Frauds and Perjuries,*" 29 Charles II, C. 3. .................................22


## OTHER AUTHORITIES

*Annual Meeting of the American Law Institute,* 70 A.L.I. 179 (1993) .......................................27

Customs Form 301 .............................................................................................. *passim*

Customs Form 3461 ................................................................................................7

Customs Headquarters Ruling 115122 (Dec. 20, 2000) ...........................................17

Customs Headquarter Ruling 115777 (Aug. 26, 2002) ............................................17

Customs Headquarters Ruling HQ 209973 (Feb. 14, 1979).....................................18

Department of Homeland Security, *Efficacy of Customs and Border Protection's Bonding Process*, Office of Inspector General Report (OIG 11-92, June 2011) ............................. *passim*

Merriam-Webster's Collegiate Dictionary, p. 819 (11th Ed. 2003) ..........................15

*Restatement (Second) of Contracts* §33 ..................................................................19

*Restatement (Second) of Contracts* §110..................................................................22

*Restatement (Second) of Contracts* §131..................................................................22

*Restatement (Third) of Suretyship and Guaranty* §11 ...............................................22

*Restatement (Third) of Suretyship and Guaranty* §27 ...............................................29

*Restatement (Third) of Suretyship and Guaranty* §37 ..........................................22, 27

*Restatement (Third) of Suretyship and Guaranty* §44 ...............................................27

49 Fed. Reg. 41152 (Oct. 19, 1984) .........................................................................4

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. DONALD C. POGUE, SENIOR JUDGE

---

HARTFORD FIRE INSURANCE COMPANY,        :

                Plaintiff,        :

                  v.        :        Consol. Court No.  09-00122

UNITED STATES        :

               Defendant,        :

---

## PLAINTIFF'S MEMORANDUM IN SUPPORT
## OF ITS MOTION FOR SUMMARY JUDGMENT

To import commercial goods into the United States, an importer must provide security, often in the form of a Customs bond, to cover any duty, tax, or charge. 19 U.S.C. § 1623.  A Customs bond – when properly executed – is designed to cover these duties, taxes, and charges if the importer fails to make the required payments owed to the United States.

Pursuant to statute, U.S. Customs and Border Protection ("Customs" or "CBP") promulgated rules regulating the specific form and content required for Customs bonds.  19 C.F.R. § 113.  These regulations require certain information be included in order for a bond to be complete and effective. Together, these regulatory-required terms define and limit the scope of the surety's potential obligation under a bond.  Separately, as a matter of contract law, a bond must include certain essential terms, *e.g.,* the identification of the transaction secured by the bond (the "entry number"), the date of the transaction (the "transaction date"), the amount of the bond (the "penal sum"), and the identification and signature of the parties, in order to be enforceable. Without these essential terms, the inclusion of which is necessary to the formation of a valid contract, a bond is hopelessly undefined such that no contract can be formed.

Statute and regulation place the legal obligation on *Customs* – not the surety – to review and accept only bonds that comply with these regulations and contain all required terms. 19 U.S. 1623; 19 CFR § 113.11. If an importer presents an incomplete bond, Customs is required to reject it and the goods should not enter the United States.

It is undisputed that each of the 61 single entry bonds (hereafter referred to as the "SEBs")[1] in this case were missing bond terms required by regulations. This failure was part of a broader problem at Customs. Homeland Security's Inspector General found that "U.S. Customs and Border Protection . . . [did] not have adequate controls over the single transaction bond process." Department of Homeland Security, *Efficacy of Customs and Border Protection's Bonding* Process, Office of Inspector General Report (OIG 11-92, June 2011), p.1 (hereafter the "*OIG Report*"); attached hereto as Exhibit B. According to the Inspector General, Customs failed to "review bonds as required" by law, and therefore "has inaccurate and incomplete bonds" that the agency "should have rejected." *Id.* at 3, 5.

Rather than accept responsibility for its mistakes, Customs has unlawfully attempted to transfer the costs of its own failures onto Hartford Fire Insurance Company ("Hartford"). Hartford paid approximately $2.2 million after Customs made demands for payment on the invalid SEBs. Hartford filed a 30-count complaint seeking a refund of the money it paid to Customs on these unlawful demands. Hartford is entitled to a refund for three reasons:

*First*, each of the SEBs failed to comply with Customs regulations. Therefore, Customs should have rejected these bonds as they are not valid bond instruments.

---

[1] The SEBs are annexed hereto as Confidential Exhibit A. These documents contain the social security number of Hartford's agent, necessitating confidential treatment of them.

*Second*, because many of the SEBs were missing essential terms necessary to define the scope of the bonds, no legally valid contracts were formed. Moreover, absent certain key terms and signatures, the SEBs also fail to comply with the Statute of Frauds and are unenforceable.

*Third*, Customs failure to reject the SEBs impaired Hartford's suretyship rights against the importers, thereby relieving Harford of its payment obligations under these bonds.

Hartford is entitled to summary judgment on each of the thirty counts in the complaint because Customs lacked legal authority to demand payment from Hartford under the governing regulations and traditional principles of contract law and suretyship. Accordingly, the Court should enter an order canceling the SEBs and the charges, and directing the United States to return the monies paid with interest to Hartford.

## BACKGROUND

### 1.    Congress Authorized Customs to Prescribe Customs Bond Forms

Congress empowered the Secretary of the Treasury to prescribe the form and content of Customs bonds,[2] and to "prescribe such rules and forms to be observed by them as may be necessary for the proper execution of the law." 19 U.S.C. § 66. *See also Hartford Fire Insurance Co. v. United States*, 544 F.3d. 1289, 1294 (Fed. Cir. 2008) (Customs has congressional authorization to 'prescribe the conditions and form' of bonds). The regulatory framework implementing this statutory scheme is set out at 19 C.F.R. § 113.[3] The regulations

---

[2]    The Secretary is authorized to prescribe "the conditions and forms of such bond and the manner in which the bond may be filed with . . . the Customs Service, and fix the amount of penalty thereof, whether for the payment of liquidated damages or of a penal sum . . . ." 19 U.S.C. § 1623.

[3]    The SEBs at issue in this case were submitted with entries made in 2004 through 2006. Citations in this memorandum to 19 CFR § 113, therefore, will be to those years' editions of the regulations, the cited language of which did not vary from year-to-year.

mandate that all bonds are in writing, signed by the bond principal and surety, and on Customs Form 301 ("CF 301"). 19 C.F.R. § 113.11.[4] *See* Deposition of the Defendant by its Designated Spokesperson, Bruce Ingalls (hereafter *Ingalls Deposition*) at 32-33 ("Q. Does Customs have discretion to accept any other written document in lieu of 301 to satisfy the bonding requirement? A. Not that I'm aware of"). Cited pages from the *Ingalls Deposition* are attached as Exhibit C.

Customs' regulations define the data elements that are required to be included in a properly executed bond. *See OIG Report* at p. 5. ("[f]ederal regulations provide specific information that STBs [Single Transaction Bonds] **must include** prior to CBP's approval," *citing* 19 C.F.R. § 113.21) (Emphasis added). Subpart C to 19 C.F.R. § 113 sets out the "Bond Requirements", and § 113.21 therein specifies the information "**required on the bond**":

> (a)(1) *Identification of principal and sureties.* The names of the principal and sureties and their respective places of residence shall appear in the bond. In the case of a corporate principal or surety, its legal designation and the address of its principal place of business must appear.
>
> (2) *Identification of trade names and unincorporated divisions of a corporate principal.* The principal may list on the bond trade names and the names of unincorporated divisions of the corporate principal which do not have a separate and distinct legal status who are authorized to use the bond in their own name.
>
> (b) *Date of execution.* Each bond shall bear the date it was actually executed.
>
> (c) *Statement of the amount.* The amount of the bond shall be stated in figures.
>
> (d) *Use of abbreviations.* Abbreviations shall not be used except in dates and the state of incorporation of the principal or the surety.
>
> (e) *Blank spaces on the bond.* Lines shall be drawn through all spaces and blocks on the bond which are not filled in.

Furthermore, an SEB must identify the effective date of the transaction. 19 CFR § 113.26.

---

[4]    Customs authorized the CF 301 as the official Customs bond effective on February 18, 1985. 49 Fed. Reg. 41152 (Oct. 19, 1984).

Bonds used by corporate importers require additional information. The bonds must include the written signature of the principal's officer or its designated agent acting under a power of attorney:

§ 113.33 Corporations as principals.

(a) *Name of corporation on the bonds.* The name of a corporation executing a Customs bond as a principal, may be printed or placed thereon by means of a rubber stamp or otherwise, followed by the written signature of the authorized officer or attorney.

(b) *Signature and seal of the corporation on the bond.* The bond of a corporate principal shall be signed by an authorized officer or attorney of the corporation and the corporate seal shall be affixed immediately adjoining the signature of the person executing the bond, as provided for in § 113.25. . . .

Likewise, the regulations covering corporate sureties such as Hartford require the written signature of the surety or its agent be on the bond:

§113.37 Corporate sureties.

(b) *Name of corporation on the bond.* The name of a corporation executing a CBP bond, as a surety, may be printed or placed thereon by means of a rubber stamp or otherwise, followed by the written signature of the authorized officer or attorney.

*        *        *        *        *

(e) *Signature and seal of the corporation on the bond.* A bond executed by a corporate surety must be signed by an authorized officer or attorney of the corporation and the corporate seal must be affixed immediately adjoining the signature of the person executing the bond, as provided for in §113.25.

The CF 301 form expressly incorporates 19 CFR § 113, and requires the inclusion of the data elements specified in the regulations. *Sioux Honey Assoc. v. Hartford Fire Insurance Co.*, 672 F.3d 1041, 1057 (Fed. Cir. ), *cert. denied*, 133 S. Ct. 126 (2012) (bond contracts incorporate federal regulations); *See Nutt v. United States*, 12 Cl Ct. 345, 352 (1987) (regulations are incorporated into contract when the references are specific and limited in number); *aff'd sub*

*nom. Smithson v. United States*, 847 F.2d 791 (Fed.Cir. 1988), *cert. denied*, 488 U.S. 1004

(1989). *See also Ingalls Deposition* at 39-40 ("for the most part" the "blanks on the 301

correspond to the regulations"). The Instructions to CF 301 also state that: "All fields are

required unless otherwise stated."[5]

Below is CF 301, annotated to show where the specified data elements are required on

the bond form:



<hr/>

[5]     The instructions for completing the CF 301 require that the identification of the principal
include "the full name and legal description (i.e., corporation, partnership, individual, etc.) of the
bond principal, a physical address (not a P.O. Box) and the state of incorporation, if applicable."
Thus, the complete "legal designation" required by section 113.21 includes a statement
identifying the principal's (and surety's) state of incorporation, *viz*: "A Connecticut Corp."

2.      **Customs Administers the Bond Approval Process**

Customs established the process for properly completing, submitting, and obtaining the

approval of customs bonds.  Sureties, like Hartford, are required to provide Customs with certain

information, including its signature (or the signature of its designated agent), legal designation

and corporate seal.  Customs authorized sureties to provide this information through the use of

pre-printed, multi-part, CF 301 bond forms. *Ingalls Deposition* at 43 ("this was worked out with

the surety industry and CBP, that they would go to preprinted forms instead of we[t] signatures).[6]

Hartford's CF 301s were printed and pre-signed on the company's behalf by its general agent,

James Gorman Insurance., Inc.[7]   A photocopy of one of Hartford's pre-printed bond forms is

attached as Confidential Exhibit "F".[8]

---

[6]      A fully executed Part 1, or top copy of the CF 301bond form, is considered to be the
"original" bond.  The Part 1 is submitted by the importer to Customs at the time of entry.  *Ingalls
Deposition* at 86 ("Q.  So which copy is submitted to customs as the original?  A. That would be
part 1 titled 'CBP'").  Treating the Part 1 as the original bond reflects the parties' intent that only
the top copy creates a binding obligation with Customs.  The Part 1 also provides a check against
misuse of the other bond parts which, once separated from the Part 1, could be altered by
dishonest importers and submitted with other entries.  *Ingalls Deposition* at 90 ("Fraud can
happen anywhere and to anyone"); Deposition of the Plaintiff by its Designated Spokesperson,
Robert Scott Cochrane (hereafter *Cochrane Deposition*) at p. 35 ("Part 1 is the enforceable
contract, the other [copies] are provided to people for information purposes or recordkeeping").
Cited pages from the *Cochrane Deposition* are attached as Exhibit D.

[7]      Hartford made sure that its agent's signature and its corporate seal appeared only on the
Part 1 copy, as that was the "original" bond submitted to Customs.  Deposition of James Gorman
(hereafter *Gorman Deposition*) at p. 39 ("See, the only valid one is the white one because that's
the one that would have my signature on it.  The others would not have my signature, so it would
have no binding authority anywhere").  Cited pages from the *Gorman Deposition* are attached as
Exhibit E.

[8]      Hartford's pre-printed bond forms also contains the social security number of its agent,
necessitating confidential treatment of this document.

Typically, importers have their agents, the customs house broker, obtain a pre-signed bond form from a surety (or the surety's retail insurance broker) that is willing to underwrite the transaction. Thereafter, the importer or the customs house broker completes the remaining portions of the CF 301 by inserting the required importer and entry information. See *Ingalls Deposition* at pp. 47-48 (the filer or its attorney-in-fact "would complete the execution date . . . indicate the entry number . . . put the date of transaction, fill in the port code"); *Id.* at pp. 48-49 ("they would fill in their name, address, state of incorporation . . . then they would put their name and title and sign . . . their signature in 5, that's block 5"). The customs house broker ordinarily signs the Part 1 copy on behalf of the importer (assuming the existence of a valid power of attorney filed with Customs), and submits the original bond, together with the CF 3461 and other entry papers, to Customs for its review and approval. *See Gorman Deposition* at 33 (the surety's agent "would fill in" the surety's information and then the importer's customs broker would have to fill in the rest. "If the customs broker filled it in incorrectly, it's basically a useless piece of paper"). [9]

---

[9]      That was process followed here. Defendant produced affidavits from several customs house brokers that were involved with filing most of the SEBs at issue in this case. See Exhibit "G" consisting of the Declarations of Mitchell Scher of Vandegrift Forwarding Company; Raymond Kelly of Rogers & Brown, Co.; Michael Aguilar of Gateway Logistics Group; Henri Mora of Marie F. Button Brokerage; and Steve Renaut of A&A Ltd. Brokerage. The Scher Declaration avers that the importers were customs brokerage clients of Vandegrift Forwarding, and that Vandegrift represented the importers pursuant to powers of attorney. The Scher Declaration also confirms that Vandegrift purchased the SEBs for its client from retail insurance brokers representing Hartford. Similarly, the Kelly, Agila, Mora, and Renaut Declarations aver that the other customs brokers, each of which was acting as a sub-broker for Vandergrift, obtained, completed, and filed the SEBs on behalf of their importer clients. **The custom house brokers each acknowledged that the SEBs at issue in this case were missing one or more essential bond terms.**

3. __Customs is Required to Review Bonds for Completeness and Accuracy__

At the port, the importer or its customs house broker presents the original bond to

Customs. *Ingalls Deposition* at 29-30 ("the importer or customs house broker present the 3461,

the package with all of the supporting documents, it is our job, CBP's job to review those

documents"). Before the merchandise can be imported and the entry released into the United

States, Customs is required to review the bond to ensure that all of the regulatory "requirements

are being met," *id. at 30,* and that the bond is "properly executed." *Id.* at 33. *See also Id.* at 103

("Q. Are they [Customs] required by law to review those [entry] packages? A. Are they

required by law? I don't – I mean, they – as the course of doing their job and determining

admissibility and stuff like that, I would say that they are required or should review them"). The

Port Director must "approve" the bond *if* he determines the bond is "in proper form and

provid[ed] adequate security." 19 CFR § 113.11. If required data elements are missing, Customs

is required to reject that bond. *OIG Report* at 5 (Concluding that inaccurate or incomplete bonds

should be rejected). *See also Ingalls Deposition* at 31 ("if any of the documents [Customs]

believes are missing or have things missing on any of them, [Customs] has the authority to reject

it."). For years, Customs has followed this procedure and has rejected bonds that do not have the

information required by 19 CFR § 113.[10]

As the Department of Homeland Security Office of Inspector General made clear, "Port

Directors. . . have the responsibility to set the bond amount and to *validate its accuracy and

completeness*." *OIG Report* at 2. The Executive Director of Trade Enforcement and Facilitation,

---

[10]     See Exhibit "H" for Customs' Entry/Summary Rejection Sheets showing that the agency
has rejected bonds which fail to include: 1) the importer's name and address; 2) the signatures of
the principal or its agent; 3) the signatures of the surety; 4) the penal sum; 5) the transaction date;
and 6) the state of incorporation portion of the legal designation.

the Office of Field Operations,[11] also confirmed in an October 11, 2005 memorandum to all

Customs Directors that:

> When reviewing bonds, both continuous and single transaction, **every data element on the bond is important**. If a bond is only reviewed for sufficiency and nothing else, the revenue is not protected. **Failure to ensure that all data elements are properly completed and verified leaves CBP vulnerable to a loss of revenue, as a surety may refuse to insure an improperly filed bond** (emphasis added).

*See* Exhibit I.

In order to ensure the inclusion of all of the required data elements, many ports issue

checklists listing the necessary bond terms.  See Exhibit J.  Customs personnel also receive

training on how to review bonds to ensure that they are complete, accurate, and properly

executed.  *Ingalls Deposition* at 171-72.

### 4.   Customs Failed to Maintain Adequate Controls Over the Bond Approval Process

In a report dated June 27, 2011, the Department of Homeland Security addressed the

efficacy of Customs' bonding program in the *OIG Report.*[12]  The OIG found that Port Directors

had the responsibility "to set the bond amount and to validate its accuracy and completeness,"

*see OIG Report* at p. 2, but that CBP "[could] not identify the number of STBs, [had] inaccurate

---

[11]    Customs' Office of Field Operations is the largest division within Customs.  It is responsible for border security and trade facilitation, and oversees the activities at its field offices and ports of entry and currently is overseen by an Assistant Commissioner. *See* Official Website of the Department of Homeland Security, U.S. Customs and Border Protection, "Assistant Commissioners' Offices" at https://www.cbp.gov/about/leadership/assistant-commissioners-offices.

[12]    As part of its audit, the OIG obtained information from 71 port directors about their policies, procedures and methods for determining the accuracy and validity of single transaction bonds.

and incomplete bonds, [and did] not maintain and review bonds as required . . . ." *Id.* at p. 3.

Specifically, the OIG determined that Customs lacked adequate controls over the single

transaction bonding process, stating in relevant part:

> Although CBP guidance exists regarding STB approval and validation, ports do not consistently apply it. **Federal regulations provide specific information that STBs must include prior to CBP's approval.** We reviewed a statistical sample of FY 2009 STBs totaling $8.3 million. Our review showed that 230 of 382 (60%) of the STBs, totaling approximately $5.3 million, **had one or more errors that may impact CBP's ability to recover revenue, if necessary. CBP should have rejected these bonds because of inaccuracies and incompleteness.**
>
> Included in the $5.3 million noted above, STBs totaling approximately $1.1 million **had major omissions or errors such as missing signatures and inaccurate transaction numbers,** which may create collection challenges.

*OIG Report* at p. 5 (footnotes omitted) (emphasis added).  The OIG Report concluded that

Customs should have rejected the bonds in its sample.  *Id.*

## 5.   Customs Improperly Accepted Incomplete and Deficient SEBs in This Case

Customs has admitted that the SEBs at issue are "incomplete" and "deficient," *see*

*Ingalls Deposition* at 245, as each is missing the signature of the principal obligor[13] and/or other

data elements required by 19 CFR § 113.  *Id.* at 245-249.[14]  Visual inspection of the SEBs also

---

[13]     In addition to seven SEBs that lack the principal's signature, Hartford contends that 44 of the bonds do not comply with the written signatures requirements of 19 C.F.R. § 133.21(d) and §113.33 in that each of those bonds are initialed, rather than signed, by the importer or customs house broker.  *See Gorman Deposition at 133* ("Initials are acceptable [sic] to customs.  You have to sign your name.  There's no name on these. . . Every one of them.  It's the same initial, MP. . . . I've never seen customs accepting initials").

[14]     In denying other Hartford protests that are not presently before the Court, but which are pending on the CIT's reserve calendar or suspended under this test case, Customs characterized single entry bonds missing the same bond terms that were omitted from the SEBs at issue in this case as being "technically deficient."  *See* Exhibit K, consisting of protest denial for protests:

confirms that each of the SEBs is incomplete. *See* Confidential Exhibit A. Notwithstanding

these deficiencies, Customs accepted the SEBs and allowed the entries to be released into

commerce. The entries at issue were subject to antidumping duty orders, the liquidation of

which were suspended while the various relevant administrative reviews were conducted. Upon

completion of those reviews, the antidumping duties owed by the importers/principal obligors

were fixed and demands were made by Customs on the importers for those amounts. In all cases

the importers failed to pay Customs, which in turn demanded that Hartford perform on the SEBs.

Hartford protested Customs' demands pursuant to 19 U.S.C. § 1514(a)(3), contending that the

demands on the SEBs were invalid charges or exactions, and requesting that the demands be

cancelled. Customs summarily denied Hartford's protests.

Hartford submitted payment to Customs in satisfaction of its demands on the SEBs.

Thereafter Hartford commenced various lawsuits, which eventually were consolidated into this

test case, seeking a determination that Customs acted unlawfully by failing to reject the SEBs

and by demanding payment from Hartford on those bonds. For the reasons discussed herein,

Hartford is entitled to summary judgment on each of the thirty counts in the complaint, and an

order directing Customs to cancel the SEBs and the charges made against each bond, and to

refund Hartford's payments with interest as provided by law.

---

2704-09-101856, CIT Court No. 11-00461 (no execution date or principal's legal designation);
2704-08-101182, CIT Court No. 11-00424 (no surety signature or legal designation); 2704-14-
101417, CIT Court No. 15-00116 (no transaction date or principal's legal designation); 2704-15-
100438, CIT Court No. 16-00034 (no principal's address, execution date, transaction date, legal
designation); 2704-09-101903, CIT Court No. 11-00526 (no complete entry number); 2704-08-
101471, CIT Court No. 11-00460 (no legal designation); and, 2704-09-103430, CIT Court No.
11-00498 (no execution date).

## STATEMENT OF UNDISPUTED FACTS

The following facts are undisputed and demonstrate that summary judgment for Hartford

is appropriate:

- Customs requires that single entry customs bonds be submitted in writing on Customs Form 301. *Ingalls Deposition* at 32-33.

- Prior to the release of the merchandise the importer or its agent, the customs house broker, must submit the bonds to Customs for approval. *Id.* at 29-30.

- Customs is required to review the bonds to ensure that the bonds meet all regulatory requirements and are properly executed. *Id.* at 30.

- A properly executed bond is needed in order to import merchandise into the United States. *Id.* at 33.

- Properly executed bonds require the signatures of the bond principal and surety, as well as the other essential data elements set forth in the regulations. *Id.* at 33-34.

- The SEBs at issue in this case were incomplete and did not fully comply with the regulations. *Id.* at 244-249. Each of the SEBs was missing, respectively, the signature of the principal, the signature of the surety, the execution date of the bond, the transaction date of the bond, the identification of the transaction, the limit of liability of the bond, and/or the principal's complete legal designation including its state of incorporation. *Id.* *See* Confidential Exhibit A.

- Customs is not authorized by statute or regulation, or by any its own internal policies or procedures, to rely upon extrinsic evidence to complete or remedy a bond that is missing information on the CF 301 form. *Id.* at 38-39.

## STATEMENT OF JURISDICTION AND STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 1581(a), the Court has jurisdiction over this action, which was

timely filed within six months of the denial of Hartford's protests, challenging Customs'

demands against Hartford as surety on the SEBs submitted by the importers.  Such demands are

"charges or exactions of whatever character within the jurisdiction of the Secretary of the

Treasury" subject to protest under 19 U.S.C. § 1514(a)(3) and review in this court pursuant to 28

U.S.C. § 1581(a). *See Hartford Fire Insurance Co. v. United States*, 544 F.3d at 1293.  Hartford

paid the charges, fees, and interest demanded of it by Customs. The court reviews *de novo* the Customs' protest decisions. 28 U.S.C. § 2640(a)(1).

Summary judgment is appropriate under Rule 56 when "there is no genuine issue as to any material fact . . . ." USCIT R. 56(c); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). This standard does not require that no facts be in dispute. *Liberty Lobby,* 477 U.S. at 248. Rather "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* To determine whether material facts are in dispute, the evidence must be considered in a light most favorable to the non-moving party. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970). Because no genuine issues of material fact exist in this case, summary judgment for Hartford is required.

## ARGUMENT

### I. The SEBs Do Not Comply with the Customs Regulations and Are Unenforceable Against the Surety

#### A. Customs Regulations Require That Certain Bond Terms Be Included on the CF 301

Each of the SEBs was incomplete, and missing certain bond terms required by the regulations, at the time it was presented to Customs. As such, the SEBs were not "in proper form," 19 CFR § 113.11, and Customs lacked legal authority to approve—and should have rejected--the SEBs prior to the entry of the merchandise secured by the bonds. Because the SEBs failed to comply with the regulatory requirements, Customs' demands against Hartford for payments on the SEBs were unlawful.

Pursuant to statutory authority, Customs promulgated regulations governing single entry bonds. 19 CFR § 113. Section § 113.11 mandates that bonds must be submitted "on Customs Form 301" (emphasis added). The bonds "**shall be** filed with and **approved by**" (emphasis

added) the port director. *Id.* Section 113.21 sets out the "information **required** on the bond" (emphasis added). Subsection 113.21(a)(1) states that the names, addresses of their principal places of business and their legal designations of corporate principals and sureties "**must** appear" (emphasis added) on the CF 301. Subsection 113.21(b) states that a bond "**bear** the date it was actually executed" (emphasis added). Subsection 113.21(c) requires that the amount of the bond "**shall** be stated in figures." Section 113.26 directs that the SEB is effective on the date that the transaction is identified on the CF 301. Section 113.33 states that bonds of corporate principals "**shall** be signed by an authorized officer or attorney . . ." (emphasis added). Likewise, pursuant to § 113.37, bonds executed by a corporate surety "**must** be signed" (emphasis added) by an authorized officer or attorney of the corporation.

Customs' regulations require the inclusion of each of these specified elements in mandatory terms: the specified elements "must"[15] or "shall" be included in the bond.[16] Customs is required to review the bonds to ensure they are "in proper form." 19 CFR § 113.11. Customs has no discretion to disregard these regulatory requirements. *See United States v. Utex Int'l, Inc.*, 857 F.2d 1408, 1413 (Fed. Cir. 1988) ("[t]he bond cannot be interpreted contrary to law and regulations") (citations omitted); *United States v. Browne Vintners Co., Inc.*, 34 CCPA 112, C.A.D. 351 (1946); *OIG Report* at p 5 ("[f]ederal regulations provide specific information that STBs **must** include prior to CBP's approval") (emphasis added); *Ingalls Deposition* at 33-34

---

[15]     "Must" is defined as "to be commanded or requested to . . . ." Merriam-Webster's Collegiate Dictionary, p. 819 (11th Ed. 2003).

[16]     As a rule of statutory construction, the word "shall" when used in a statute is generally imperative or mandatory. *National Association of Homebuilders v. Defenders of Wildlife*, 551 U.S. 644, 661-62 (2007). Further clarifying the mandatory intent of the use of the word "shall" in 19 CFR 113.21 is that in 2015 that section was amended to insert "must" in place of "shall."

("When you properly execute a bond, you should be – as laid out in the regulations, you should be adhering to those elements").

Here, Customs failed to do its job. None of the SEBs was properly executed as each was missing one or more required elements. Customs was required to reject these bonds. Customs has admitted as much, recognizing, "[f]ailure to ensure that all data elements are properly completed and verified leaves [Customs] vulnerable to a loss of revenue, as a surety may refuse to insure an improperly filed bond."' *See* Exhibit I. Had Customs rejected the SEBs, the merchandise would not have been released, no duty would have been assessed, and no obligation would have arisen for the surety to assume upon the importer's default. *Hartford Fire Insurance Co. v. United States*, 857 F. Supp. 2d 1356, 1362 (CIT 2012) ("Without Customs' approval of the bond, merchandise does not enter the United States . . ."); *Ingalls Deposition* at 93 ("so we are still holding the cards, you aren't getting your cargo until you fix this"). Nonetheless, Customs accepted the SEBs, and subsequently released the entries into commerce, despite its lack of legal authority to do so. 857 F. Supp. 2d at 1362.

Because the incomplete and deficient SEBs submitted to Customs failed to meet the requirements of 19 CFR § 113, Customs should be required to cancel the improper charges and demands made against the bonds and return those payments to Hartford. *See Sioux Honey Association v. United States*, 722 F. Supp. 2d 1342, 1364 (CIT 2010) (recognizing Customs' "longstanding authority" to cancel bonds charges; *Hartford Fire Insurance Co. v. United States*, 544 F.3d at 1294 (noting Customs' "broad" authority pursuant to 19 U.S.C. § 1623(b) and 19 CFR § 113.51 to cancel any bond charges completely if a breach renders the bond unenforceable). *See also Union of Concerned Scientists v. Atomic Energy Commission*, 499

F.2d 1069, 1082 (D.C. Cir. 1974) (it is a "well-settled rule that an agency's failure to follow its own regulations is fatal to the deviant action").

B.   Customs Should Be Bound by Its Own
     Long-Standing Practice of Rejecting Bonds That Are Incomplete

Customs' own practices demonstrate that customs bonds missing information required by regulations are neither binding nor enforceable. Customs has consistently made clear in a variety of contexts that, in order to be valid, bonds must be complete and accurate. Customs routinely rejected as unenforceable bonds that are incomplete. Customs should be required to adhere to its own established practices and reject the SEBs at issue in this case.

For example, in December 2000, Hartford protested Customs' demand for payment against a single entry bond that "lacked the signature and seal of the principal, the entry number, and a transaction date." *See* Customs Headquarters Ruling 115122 (Dec. 20, 2000), attached as Exhibit L. Customs' Assistant Chief Counsel held that these "deficiencies render[ed] the subject bonds incomplete and invalid and therefore concur[ed] with [Hartford] that any demand on surety should be withdrawn." *Id.*

Similarly, in another context Customs ruled that a surety's state of incorporation must accurately be reflected on bonds for them to be enforceable. *See* Customs Headquarter Ruling 115777 (Aug. 26, 2002), attached as Exhibit M. Customs explained that a surety could not file bonds identifying Illinois as its state of incorporation when the surety had previously changed its state of incorporation to Delaware. Citing the bond regulations at 19 CFR § 113.25 and § 113.37(e) (requiring the presence of the corporate seal close to the signature of the person signing on behalf of a corporate surety), Customs determined that the filing of a bond with a corporate seal reflecting the incorrect state of incorporation "contravenes the proper execution of such instruments which '. . . . includes performance of all acts necessary to render [the]

17

instrument complete and of every act required to give [the] instrument validity or to carry it into effect.'" *Id.*, *quoting Northwest Steel Rolling Mills v. Commissioner of Internal Revenue,* 110 F.2d 286, 290 (1940).

Customs has also rejected other types of bonds for not complying with regulations.  For example, Customs rejected a general warehouse bond because it "[did] not bear the corporate seal . . . as required by section 113.24(a), Customs Regulations (19 CFR 113.24 (a)), and the principal place of business of the surety."  Customs rejected the bond because information required by 19 CFR § 113 was missing.  *See* Customs Headquarters Ruling HQ 209973 (Feb. 14, 1979), attached as Exhibit N.

Customs' Entry/Summary Rejection Sheets, which were produced by the Defendant in discovery, further illustrate Customs' practice of rejecting defective or incomplete customs bonds.  *See* Exhibit H.  These entry sheets document Customs' historical practice of rejecting customs bonds, like the SEBs at issue here, that are missing essential elements. Customs, in both its own published administrative rulings and in its "at entry" bond reviews, has consistently rejected bonds that fail to meet all of the regulatory requirements, and has cancelled demands made upon sureties against such bonds.  Customs should not be permitted to take the diametrically opposite position in this litigation simply because it better suits its needs. Government agencies are bound by law and regulation, not whim and circumstance.

* * *

The SEBs are deficient, incomplete, and failed to comply with the regulatory requirement of 19 CFR § 113.  The SEBs are therefore invalid and unenforceable against Hartford.  Hartford is entitled to the cancellation of the charges against the SEBs, and to a refund of the payments it made to Customs in response to the agency's unlawful demands against those bonds.

18

II.     **The SEBs Were Not Valid and Enforceable Bond Contracts**

Even if this Court was willing to overlook the fact that the SEBs fail to conform with the regulatory requirements of 19 CFR § 113, many of these bonds are unenforceable for an entirely independent reason. Under traditional principles of contract law, bonds must contain certain essential terms in order to be valid and enforceable contracts. Many of the SEBs omitted essential contract terms, including the identification of the transaction, the transaction date, and the penal sum of the bond. Without these essential terms--which define the scope of liability and the subject matter of the contract--the SEBs are unenforceable. In addition, many of the SEBs were not signed by one or both of the parties, rendering the bonds unenforceable under the Statute of Frauds as well. Accordingly, as a matter of contract law, the Court should grant summary judgment to Hartford as to each of these bonds.

A.     Bond Contracts Missing Essential
         Terms Are Unenforceable as a Matter of Law

Customs' regulations, requiring that bonds include certain essential elements, reflect the common law contract principals that the terms of the bonds must be sufficiently defined in order to be legally binding. *Restatement (Second) of Contracts* § 33 (hereafter *Restatement of Contracts*) (requiring that essential terms of a contract must be reasonably certain). Contracts in which essential terms are imprecise, or that have been omitted altogether, lack the definiteness necessary to form an enforceable contact. *See generally Hamilton Secs Advisory Servs, Inc. v. United States,* 60 Fed. Cl. 144 (2004) (scope of work too uncertain to enforce the contract); *Bel Pre Health Care Center, Inc. v. United States*, 24 Cl. Ct. 495, 497 (1991) (description of the transaction was too general and indefinite to enforce the contract), *aff'd per curiam,* 980 F.2d 745 (Fed. Cir. 1992); *Weisberg v. United States Department of Justice*, 745 F.2d 1476, 1493

(D.C. Cir. 1984) (duration of consultancy agreement was an essential term, the absence of which prevented the formation of a legally enforceable contract).

Courts--and Customs itself--have repeatedly made clear that bond contracts which are missing essential terms, such as those mandated by 19 CFR § 113, are unenforceable. For example, in *United States v. Boecker*, 88 U.S. 652 (1874), the United States attempted to recover against a surety under a bond that had an incorrect address. The U.S. Supreme Court held that the surety could not be held liable because the address is a "term [that] is [] the essence of the contract" that "defines the place where the liability must arise." *Id.* Without the address, "[t]here could [] be no liability within the letter or meaning of the contract." *Id.*

Similarly, in *Interstate Rock Products, Inc. v. United States*, 50 Fed. Cl. 349 (Ct. Cl. 2001), *aff'd per curiam,* 48 Fed. Appx. 331 (Fed. Cir. 2002), the Court of Federal Claims held that a bid bond missing the penal sum was defective. The court stated:

> Where no penal sum is inserted on the bond, no obligation in a sum certain is undertaken by the surety. Therefore, the same protection simply is not afforded by a bond lacking a penal sum as would be provided by a complete bond. Accordingly, we conclude that the bid bond was defective here, and that the government was required to reject the bid as nonresponsive.

*Id.* at 359. Surety bond contracts are strictly construed in favor of the surety and only bind the surety to the obligation it clearly intended to assume. *Bell & Grant v. Bruen*, 42 U.S. 169 (1843). *See also Standard Federal Bank v. United States*, 2002 WL 31947572 at 13 (Fed. Cl. 2002) ("where the parties leave a principal term of a contract incomplete, there is a strong presumption that there was no intent to be contractually bound and, therefore, that no contract was formed"); *United States v. Washington International Insurance Co.,* 177 F. Supp. 2d 1313, 1316 (CIT 2001) (sureties are only bound to the extent of the obligation expressed in the bond).

Here, several SEBs were missing essential contract terms, including the identification of the particular transaction (the entry number), the transaction date, and the limit of liability/penal sum of the bond, necessary to the formation of a valid bond contract. These terms define the four corners of the surety's liability; the "letter, spirit, or meaning of the bond," *Boecker*, 88 U.S. at 656, and obligate the surety to pay the import duties, taxes and charges for the specific transaction on the designated date at the named port in the amount not to exceed the penal sum specified in the bond, nothing more. *Miller v. Stewart,* 22 U.S. 680, 702-3, 9 Wheat 680 (1824) ("Nothing could be clearer, both upon principle and authority, than the doctrine that the liability of a surety is not to be extended, by implication, beyond the terms of his contract"). Where an essential bond term is missing, no contract is created and no obligation to stand for the debt or default of the principal obligor arises. *Interstate Rock* at 358-59 ("in the event of a default by the [principal obligor] . . . the blank bond could be challenged by the surety and the purpose of the . . . bond would be defeated"). Custom's acceptance of these SEBs, notwithstanding the fact that they were missing essential terms, rendered the scope of Hartford's obligations as surety open and undefined. *Bell & Grant*, 42 U.S. at 186 ("And if there be sureties bound by [bond contracts], and the meaning is doubtful, the construction is restricted, and made most favorable to the sureties"). As such, the SEBs are invalid and unenforceable.

B.      Incomplete or Unsubscribed Bond Contracts
        are Unenforceable Under the Statute of Frauds[17]

Pursuant to § 110 of the *Restatement of Contracts*, certain classes of contracts, including

surety agreements, are subject to the Statute of Frauds.  As the *Restatement (Third) of Suretyship*

*and Guaranty*[18] (hereafter, the *Restatement of Suretyship*) makes clear, "[p]ursuant to the Statute

of Frauds, a contract creating a secondary obligation is unenforceable as a contract to answer for

the duty of another unless a written memorandum satisfying the Statute of Frauds or an

exception applies." *Restatement of Suretyship* at Chapter 2, § 11.  A written memorandum is

defined as follows:

> Unless additional requirements are prescribed by the particular statute, a contract
> within the Statute of Frauds is enforceable if it is evidenced by any writing,
> **signed** by or on behalf of the party to be charged, which
>
> (a) reasonably identifies the subject matter of the contract,
> (b) is sufficient to indicate that a contract with respect thereto has been made
>     between the parties or offered by the signer to the other party, and
> (c) states with **reasonable certainty the essential terms of the
>     unperformed promises** in the contract (emphasis added).

*Restatement of Contracts* at § 131; *See also G.B.J. Corp. v. Eastern Ohio Paving Co.*, 139 F.3d

1080, 1085 (6th Cir. 1998) ("[T]he Statute of Frauds, [requires that the writing] designate the

---

[17]     The suretyship provision of the Statute of Frauds was enacted in section 4 of the English
Statute of Frauds in 1677.  *See An Act for the Prevention of Frauds and Perjuries*," 29 Charles
II, C. 3.  It was repealed in 1954, except for the suretyship and land contract provisions.
*Restatement of Suretyship*, § 11, comment a (1996).  In Maryland and New Mexico, the Statute
of Frauds is in force by judicial decision; all other states except Louisiana have statutes similar to
the English one.  *Id.*

[18]     This Court has relied upon suretyship law principles as set out in the *Restatement of
Suretyship* in determining the rights and obligations of parties under customs bonds.  *See United
States v. Great American Insurance. Co. of New York*, 791 F. Supp. 2d. 1337 (CIT 2011), *aff'd in
part and rev'd in part*, 738 F. 3d 1320 (Fed. Cir. 2013); *United States v. Great American
Insurance Co.*, 738 F.3d 1320, 1332 (Fed. Cir. 2013)*; United States v. Hitachi Am., Ltd.*, 172
F.3d 1319, 1337 (Fed. Cir. 1999).

parties, identify and describe the subject matter and state all the essential or material terms of the contract") (citations omitted).

Congress or an agency can also impose a Statute of Frauds in specific areas. *See Lublin Corp. v. U.S.*, 84 Fed. Cl. 678, 686 (Fed. Cl. 2008)) ("Congress knows how to write a statute of frauds if it wants to . . ."). The U.S. Court of Federal Claims has explained that statutes or regulations impose a Statute of Frauds if they are "explicit in requiring that every contract . . . 'be reduced to writing, and signed by the contracting parties.'" *Id.*

Customs' regulations do precisely that. 19 CFR § 113, and CF 301 itself, expressly incorporate a Statue of Frauds, by requiring that the SEBs be in writing, (§ 113.11), that the bonds include the full (*i.e.*, non-abbreviated, as per § 113.21(d)) written signature of the principal and the surety, (§ 113.33 and § 113.37), and that they contain all of the essential terms required by the regulations, (§ 113.21), in order to be valid and enforceable instruments. *See Russell v. Annable*, 109 Mass 72 (1871) ("The sureties on a bond are not holden, if the instrument is not executed by the person whose name is stated as the principal therein"); *Gay v. Murphy*, 134 Mo. 98 (1896) ("[I]f the name of the principal is called for in the bond, and it is not signed by him, it is not only void as to him, but as to all who sign it as sureties."). *See also Sun Studs,*, 772 F.2d 1561-62, *citing with approval Commercial Credit Corp. v. Marden,* 155 Or. 29, 40 (1936) (bond was void and unenforceable as to the sureties since it was not subscribed by them as required by statute of frauds).

Here, Customs cannot seriously contend that the SEBs at issue comply with the Statue of Frauds. To the contrary, Customs has already admitted that certain SEBs are missing either a complete signature of one of the contracting parties, the entry number of the transaction, the transaction date, and/or the penal sum of the bond. *See Ingalls Deposition at 244-249. See also*

Exhibit O. Moreover, Customs has also acknowledged the critical importance of these elements, having previously deemed unenforceable, found improper in form, and/or rejected at entry, bonds that were lacking these terms. *See* Exhibits H, L, M and N. Similarly, bonds missing essential terms and conditions required by law have been held invalid by the courts. *See, e.g., United States v. Boecker*, 88 U.S. 652 (1874) (location of performance essential term); *Interstate Rock Products, Inc. v. United States*, 50 Fed. Cl. 349 (Ct. Cl. 2001), *aff'd per curiam,* 48 Fed. Appx. 331 (Fed. Cir. 2002) (penal sum essential term) *United States v. ____*, 24 F. Cas. 739, 740 (C.C.C. Va. 1811) (bond "vitiated by the omission of a material condition required by law"); *Gay v. Murphy*, 134 Mo. 98 (1896) (unsubscribed bond void to all who sign it as sureties). Because the SEBs were not signed by the parties and/or were missing essential terms, they fail to comply with the Statute of Frauds, and are therefore unenforceable.

C.     Customs Cannot Remedy the Incomplete SEBs with Extrinsic Documents

Customs will likely argue that it is permitted to rely on extrinsic documents to complete or "fill in" information that is missing from the SEBs. Customs' position is clearly contrary to law and should be rejected by this Court.

First, the SEBs are statutory bonds, *see* 19 U.S.C. § 66, §1623, and the regulations setting out the essential bond terms were promulgated pursuant to that statutory authority. This means that the SEBs must comply with all applicable statutes and regulations. *United States v. DeVisser*, 10 F. 642, 648 (S.D.N.Y. 1882). Where one or more of the essential bond terms required by law is omitted from a bond, as is true of each of the SEBs, Customs cannot rely upon extrinsic evidence "to supply the omission, and to make the bond conform to the statute." *United*

*States v. ____,* 24 F. Cas. 739, 740 (C.C.C. Va. 1811) ("[t]he bond to be good as a statutory

bond, ought to contain what the law requires").

Second, the SEBs expressly incorporate the custom bond regulations, *Sioux Honey,* 672

F.3d at 1057 (bond contracts incorporate federal regulations), and therefore the regulatory

requirements must be satisfied for the bonds to be complete and enforceable. *See Southern*

*California Edison Co. v. United States,* 226 F.3d 1349, 1353 (Fed. Cir. 2000) (recognizing that

regulatory terms and conditions may be incorporated and made part of a contract with the

government); *Cf. Precision Pine & Timber, Inc. v. United States,* 596 F.3d 817, 826 (Fed. Cir.

2010), *cert denied* 562 U.S. 1178 (2011) (finding language insufficient to incorporate regulations

into a government contract absent the use of clear and express language of incorporation). The

regulations require that the SEBs be in writing, be submitted on CF 301 forms, and include all of

the data elements specified by the regulations. The incorporation of the bond regulations in the

CF 301 itself, in effect, requires that each bond form constitutes the complete and final contract

between the parties. As such, Customs is precluded from looking outside of the SEBs to obtain

essential information that has been omitted from the bond form as its own regulations require

that these elements be contained on the CF 301 form itself.

Third, the Federal Circuit has rejected Customs' argument that extrinsic evidence can be

used to correct an incomplete or deficient contract. In *Sun Studs, Inc. v. Applied Theory Assoc.*

*Inc.,* 772 F.2d 1557 (Fed. Cir. 1985), the Federal Circuit held that a settlement agreement which

lacked a party's signature was void. As the *Sun Studs* Court noted, the fact that the defendant

had contemporaneously sent a signed cover letter referencing the settlement agreement was

insufficient to cure the deficiency in the agreement itself. The Court made clear the signed

transmittal letter could not be used to amend the actual agreement. *Id.* at 1562.

Finally, no statutes or regulations authorize Customs' use of extrinsic evidence to "complete" bonds that are otherwise missing essential information. *Ingalls Deposition* at 38-39. ("Q. So could I point to a section in Part 113 which authorized Customs to look at extrinsic evidence to fill in gaps in bonds? A. You will not find that specifically in here....Q. Mr. Ingalls, are you familiar with any internal written customs policies or procedures which explains to customs' personnel that it may look to extrinsic evidence to fill missing pieces of information on a bond form 301? A. No."). Moreover, as Customs has conceded, extrinsic evidence does not, and cannot, "correct" or "remedy" deficiencies in the SEBs. *Id.* at 279-280 ("Q. We saw these bonds, they were unsigned. Do those signatures—is it your position that [the signature on a 3461 or 7501] remedies the fact that this bond is unsigned? A. I would not say it remedies it in that it should be signed. Because if you line it up to our bond, it says it requires a signature").

Simply put, the fact that an unsigned SEB may have been submitted to Customs together with other entry documents that were signed by the customs broker, or that an SEB which was missing an entry number may have been submitted to Customs along with entry papers for a specific entry, or that Customs may have been able to impute a penal sum for an SEB on which the limits of liability had been omitted, do not—and cannot--cure the deficiencies in the SEBs themselves. Where, as here, each of the SEBs omitted required bond terms, Customs lacked the authority to rely on extrinsic evidence to remedy the defects in those bonds. To the contrary, the regulations required Customs, prior to entry of the merchandise, to review the SEBs "to determine whether the bond [was] in proper form and provide[d] adequate security for the transaction." *Hartford Fire*, 857 F.Supp.2d at 1362. Having failed to do so, Customs cannot cure the deficiencies in the SEBs—or correct its own errors—years after the fact by "picking and choosing" information from other collateral documents.

### III.    Customs Acceptance of Incomplete SEBs Impaired Hartford's Suretyship Rights

Third, even if the Court does not grant summary judgment to Hartford because the SEBs

fail to comply with the bond regulations or traditional contract law principles, summary

judgment is still appropriate because Customs impaired Hartford's suretyship rights by accepting

defective bonds.  Customs' failure to ensure the accuracy and completeness of the SEBs

impaired Hartford's recourse against the importers, thereby relieving Hartford of its payment

obligations under the bonds.[19]

Impairment of suretyship is an act that "increases the secondary obligor's risk of loss by

increasing its potential cost of performance or decreasing its potential ability to cause the

principal obligor to bear the cost of performance. *Restatement of Suretyship* at § 37(1). "If the

obligee impairs the secondary obligor's recourse against the principal obligor" by any "act or

omission that impairs the secondary obligor's right of restitution or subrogation", *id. at § 37(3)*,

the surety "may be discharged from its obligation to the extent that such impairment would

otherwise cause the secondary obligor a loss." *Id. at* §44.[20]   Under this standard, in order for a

surety to be discharged from its bond obligation, the government must have "impaired the

---

[19]    Hartford's challenge to the enforceability of the SEBs, and its claim that the company's subrogation rights have been impaired by Customs' unlawful acceptance of the bonds, is before the Court via its 1581(a) protest jurisdiction. *See Hartford Fire*, 544 F.3d at 1293 (court must look at the true nature of the action, which was to avoid payment of a demand, in determining jurisdiction). Section 1581(a) not only states the Court's jurisdictional grant, but also effectuates a waiver of sovereign immunity in suits involving the denial of a protest. *Int'l Custom Products v. United States*, 791 F.3d 1329, 1335 (Fed. Cir. 2015) (quoting *Humane Society of the United States v. Clinton*, 236 F.3d 1320, 1328 (Fed. Cir. 2001), *cert. denied* 84 U.S.L.W. 3664 (2016).

[20]    *See Annual Meeting of the American Law Institute*, 70 A.L.I. 179 (1993) (draft of section eventually renumbered section 44 described as a "residual clause" and "recognizes that . . . one cannot think of all the possible ways that the obligee and the principal obligor could get together to impair the recourse of the secondary obligor"). In other words, section 44 captures the principle of impairment found underlying the more specific provisions within section 37, and is intended to be construed broadly.

surety's recourse against [the principal obligor] as detailed in § 37(3)." *Great American,* 738 F.3d at 1332.

Customs established and administers the procedures by which custom bonds are approved. Customs, through the adoption of the bond regulations, reserved for itself the role of validating that all bonds are complete, accurate and in proper form before releasing the bonded merchandise into the stream of commerce. In other words, Customs—not the sureties—is solely responsible for ensuring that customs bonds meet the statutory and regulatory requirements. Hartford is entitled to rely upon Customs' faithful adherence to its own regulations to ensure that bonds are in proper form prior to entry. *See Riggs Nat'l Corp. v. Comm'r,* 295 F.3d 16, 20 (DC Cir. 2002) (recognizing the well-established presumption of regularity enjoyed by government officials in the performance of their lawful duties); *Takashima USA, Inc. v. United States,* 886 F. Supp. 858, 861 (CIT 1995) (*citing Alaska Airlines, Inc. v. Johnson,* 8 F.3d 791, 795 (Fed. Cir. 1993) (presumption that public officers perform their duties correctly, fairly, in good faith and in accordance with the law and governing regulations).

Here, however, Customs failed to properly review the SEBs, and instead accepted bonds that were missing essential data elements. In so doing, Customs impaired Hartford's right of subrogation against the importers/principal obligors. Specifically, Hartford's rights were impaired by Customs' failure, prior to entry, to ensure that the SEBs were complete, accurate and in proper form, and by Customs' subsequent acceptance of bonds which failed to comply with the agency's regulations. *See OIG Report* at 5 ("From FY 2007 through FY 2010, CBP has written off $46.3 million in revenue because of inaccurate, incomplete, or missing bonds. . . . CBP should have rejected these bonds because of inaccuracies and incompleteness").

Despite the deficiencies in the SEBs, Customs subsequently demanded payment from Hartford against these bonds. Hartford paid Customs' demands, and was therefore entitled to subrogation[21] against the importers/principal obligors to recover its payments. *See Pearlman v. Reliance Ins., Co.*, 371 U.S. 132, 137 (1962) ("a surety who pays the debt of another is entitled to all the rights of the person he paid to enforce his right to be reimbursed"). Due to Customs' errors and omissions in accepting defective SEBs, if Hartford tried to pursue action against the importer/principals, the company would not be able to recover the amounts it is owed. Put another way, Hartford, having been subrogated to Customs' position, is left to seek the enforcement of incomplete, defective and non-compliant bonds which Customs should not have accepted and which it lacked authority to approve. Customs could have—and should have-- protected its own revenues without destroying Hartford's subrogation rights against the importers simply by insisting that the importers (or customs house brokers) properly execute the SEBs  Customs failed to do so. There is nothing in the law of suretyship that should cause this Court to countenance Customs' failure to abide by its regulations, or to empower Customs to benefit from the dereliction of its duties at Hartford's expense. To the contrary, the circumstances here clearly warrant that Hartford be discharged of its obligation as surety under the SEBs. *See Nova Casualty Co. v. United States*, 72 Fed. Cl. 755, 763 (2006) (surety discharged from its obligations where government departed from the terms of the bonded contract by disbursing of retained funds to the contractor); *National Surety Corp. v. United States*, 118 F.3d 1542, 1548 (Fed. Cir. 1997) (surety entitled to damages where the government release of the retainage impaired the surety's rights); *U.S. v. Continental Casualty Co.*, 512 F.2d

---

[21]     Subrogation is the remedy that the law provides "to compel the eventual satisfaction of an obligation by the one who ought to pay it." *Restatement of Suretyship* at §27.

475 (5th Cir. 1975) (affirming release of the surety *pro tanto* where the government administration of the contract impaired the surety's subrogation rights).

## CONCLUSION

Hartford respectfully requests that this Court grant its motion for summary judgment on the thirty counts in its complaint, enter an order finding that the SEBs, and Customs' demands against the SEBs, are invalid and unenforceable, and that Hartford is entitled to a refund of the payments it made against those bonds with interest.

First, each of the SEBs lacks bond terms required by law and regulations. Customs nonetheless accepted the SEBs and released the goods secured by those defective bonds. Rather than adhere to its own regulations and practices, and acknowledge the unenforceability of the SEBs, Customs sought to transfer the costs of its own improper acts and omissions onto Hartford by unlawfully demanding payment from Hartford against those defective bonds. Second, many of the SEBs are unenforceable as a matter of contract law because they are missing essential terms necessary to the formation of a legally binding contract. Third, Custom's unlawful approval of the SEBs impaired Hartford's suretyship rights against the importers, thereby relieving Hartford of its payment obligation under the bonds.

Accordingly, Hartford respectfully requests that this Court enter an order directing Customs to cancel the unlawful demands against the SEBs and refund Hartford's payments with interest as provided by law, and for such other relief as the Court deems appropriate.

Respectfully submitted,

BARNES, RICHARDSON & COLBURN, LLP.

Attorneys for Hartford Fire Insurance Co.
100 William Street, Suite 305
New York, NY  10038
Tel: (212) 725-0200
/S/_____
       Frederic D. Van Arnam, Jr.

Dated July 15, 2016
New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE DONALD C. POGUE, SENIOR JUDGE

HARTFORD FIRE INSURANCE COMPANY,

                                        Plaintiff,        Consol. Court No. 09-00122

                    v.

UNITED STATES,

                                        Defendant.

## CERTIFICATE OF COMPLIANCE PURSUANT
## TO USCIT STANDARD CHAMBER PROCEDURE 2(B)

I, Frederic D. Van Arnam, Jr., an attorney with the law firm of Barnes, Richardson &
Colburn, LLP., counsel for Hartford Fire Insurance Company, certifies that this brief complies
with the word count limitation of the United States Court of International Trade Chambers
Procedures, Rule 2(B), and that, relying upon the word count feature of Microsoft Office Word
2016, this brief contains 9,774 words.

/S/_____
                    Frederic D. Van Arnam, Jr.

Dated: July 15, 2016

<u>Certificate of Service by Mail</u>

Frederic D. Van Arnam, Jr. certifies that I am an attorney at the law firm of Barnes, Richardson & Colburn, LLP located at 100 William Street, Suite 305, New York, New York 10038, and that on July 15, 2016 on behalf of plaintiff herein in *Hartford Fire Insurance Company v. United States*, Consol. Court No. 09-00122, I caused to be placed in the United States mail, first class postage prepaid, a copy of the plaintiff's motion for summary judgment, plaintiff's memorandum in support thereof, word count certificate, plaintiff's statement of material facts as to which there is no genuine dispute, and proposed form of order, addressed as follows:

Edward Kenny, Esq.
U.S. Department of Justice
International Trade Field Office
Civil Division,
Commercial Litigation Branch
26 Federal Plaza, Suite 346
New York, New York 10278


/s/_____
        Frederic D. Van Arnam, Jr.